**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| MARY BENEFIELD, *et al.*,<br><br>          *Petitioners,*<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, *et al.*,<br><br>          *Respondents.* | Civil Action File No.:<br>2:24-cv-00104-LGW-BWC |

## MOTION TO DISMISS OF SECERTARY OF STATE BRAD RAFFENSPERGER AND ATTORNEY GENERAL CHRIS CARR

Respondents Brad Raffensperger, in his official capacity as Secretary of State of Georgia (the "Secretary" or "Secretary Raffensperger"), and Chris Carr, in his official capacity as Attorney General of the State of Georgia (the "Attorney General" or "General Carr"), respectfully submit this Brief in support of their Motion to Dismiss the Amended Petition.[1]

## INTRODUCTION

Petitioners are a special interest group and a group of individuals aiming to stop certification of the 2024 General Election by seeking a writ of mandamus against the Secretary, the Attorney General of Georgia, and the

---

[1] Respondents hereinafter refer to the document at Doc. ID No. 8 as the "Amended Petition."

Attorney General of the United States. Petitioners request that this Court use its extraordinary power of mandamus to investigate long-debunked conspiracy theories regarding the 2020 General Election and the 2022 Midterm Election and to halt certification of the 2024 General Election until this Court is satisfied that Respondents are abiding by federal and state election law. That these tired allegations have been routinely rejected has not stopped Petitioners from filing nearly identical petitions in federal courts across the country. *See United Sovereign Americans, Inc. v. Ohio*, Case No. 5:24-cv-01359-JRA (N.D. Ohio); *United Sovereign Americans, Inc. v. Griswold*, Case No. 1:24-cv-2499-SBP (D. Colo.); *United Sovereign Americans, Inc. v. Pennsylvania*, Case No. 1:24-cv-1003-DFB (M.D. Penn.). Petitioners' clear goal is to undermine public confidence in the integrity of Georgia's elections.

Petitioners seek a writ of mandamus ordering that Respondents must correct alleged errors in the 2022 elections data, must not certify the 2024 General Election results until the Court and Petitioners are satisfied that no "errors" have occurred, must submit voter registration data to the Department of Homeland Security, and must perform their duties under the law. This shameless attempt to conscript this Court into administering Georgia's 2024 General Election can be easily dismissed. First, Petitioners lack standing to pursue their claims because neither United Sovereign Americans, Inc. ("United

Sovereign Americans") nor the individual Petitioners can allege that they have suffered or imminently will suffer a concrete, particularized injury. Second, this Court does not have subject matter jurisdiction over any claim against the Secretary or the Attorney General. Third, Petitioners' claims are barred by the Eleventh Amendment. Finally, even if this Court could hear Petitioners' claims, Petitioners have failed to state a claim for mandamus relief.

## FACTUAL BACKGROUND

Petitioners are a group of eight individuals and a non-profit organization seeking a writ of mandamus against the Secretary, General Carr, and General Garland. Six of the individual Petitioners allege that they are Georgia voters,[2] and two allege that they are candidates for office in the 2024 General Election. *See* Amended Petition ("Am. Pet.") ¶¶ 62–69. One individual Petitioner, Kevin Moncla, is a resident of and registered voter in the State of Louisiana. *See id.* ¶ 86. United Sovereign Americans is a non-profit organization, but the Amended Petition alleges both that it is organized in the State of Missouri and the State of Georgia. *Compare* Am. Pet. ¶ 61, *with id.* ¶ 89.

Petitioners purport to have uncovered thousands of "potential" voter registration errors in Georgia during the 2020 General Election and the 2022

---

[2] Although the Amended Petition alleges that Charlice Byrd is a current Georgia state representative running for reelection, it does not specifically allege that Byrd is a registered voter in Georgia. *See* Am. Pet. ¶¶ 63, 81.

Midterm Election, including "illegal duplicate registrations, voters with invalid or illogical voter history, voters placed in inactive statuses on questionable authority, backdated registrations, registrations with a modified date prior to registration, invalid or illogical registration dates, age discrepant registrants, and registrants with questionable addresses." Am. Pet. ¶ 42. The Amended Petition is replete with allegations of possible or potential instances of election fraud. *See id.* ¶ 41 ("Georgia's voter registration rolls . . . contained *hundreds of thousands* of potential errors at the time of the 2022 General Election." (emphasis in original)); *id.* ¶ 51 ("Petitioners have repeatedly shown Respondents evidence of *potential violations* of election law, regarding the conduct of elections by local and state officials . . . ." (emphasis added)); *id.* ¶ 102 ("Questions concerned whether the recorded vote totals . . . *could have affected* the awarding of electoral votes from said state, which, in turn, *might have affected* the determination of the "winner" of the elections . . . ." (emphasis added)); *id.* ¶ 153 n.5 ("Petitioners do not suggest any Georgia election officials engaged in election fraud. Rather, Petitioners' point out the *possibility* of improper conduct by election officials . . . ." (emphasis in original)). These potential errors or instances of fraud were allegedly uncovered by United Sovereign Americans. *See id.* ¶¶ 89, 165. Petitioners contend that these "potential" errors are ongoing and constitute violations of the Help America

Vote Act ("HAVA"), the National Voter Registration Act ("NVRA"), and various provisions of the Georgia Election Code. *See id.* ¶¶ 172–199.

Petitioners are clear that they "do not seek to revisit the results of the 2020 presidential election, nor to reexamine the conclusions drawn by the various courts and media outlets . . . ." *Id.* ¶ 104. Moreover, Petitioners concede that "it is possible that in every federal contested election supervised and certified by the state of Georgia in 2022 the 'winner' received more votes than the 'loser.'" *Id.* ¶ 21. Nevertheless, Petitioners believe that "Respondents intend to administer and ultimately certify Georgia's 2024 general election (involving both state and federal contests) using the same inaccurate and flawed data and conditions." *Id.* ¶ 176. Based on the alleged potential "flaw[s]" and violations of state and federal law, Petitioners seek a sweeping writ of mandamus ordering that: (1) Respondents "ministerially correct" errors in the 2022 elections data, identify why those errors occurred, and prevent recurring errors; (2) Respondents "may not certify the 2024 General Election;" (3) Respondents "submit voter registration requests . . . to the Department of Homeland security to verify" citizenship of registrants; and (4) Respondents "perform their duties as the law intended." Am. Pet. at 44–45 (prayer for relief).

The Secretary and Attorney General now move to dismiss the Amended Petition.

## LEGAL STANDARDS

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) where the district court lacks subject-matter jurisdiction over a claim. Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Subject-matter jurisdiction must be established before a case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95, 118 (1998). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. Gte Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citations omitted). A defendant may challenge subject-matter jurisdiction facially or factually. *See Douglas v. United States*, 814 F.3d 1268, 1274–75 (11th Cir. 2016). A facial attack requires the court to examine the complaint, taking its allegations as true, to determine whether the plaintiff has to establish subject-matter jurisdiction, a plaintiff must allege he has standing. *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted). The Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction, *see Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984), and therefore may be considered on Rule 12(b)(1) motion.

A defendant may also move to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556.  The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," but the Court is not required to accept allegations that are merely legal conclusions. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A pleading that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action is subject to dismissal. *Ashcroft*, 556 U.S. at 678 (2009).

## ARGUMENT

## I.   This Court lacks jurisdiction over Petitioners' mandamus claim against the Secretary and the Attorney General.

Petitioners cannot satisfy the requirements of Article III standing because they fail to plead that they have suffered a particularized injury. But

even if they could meet the most basic requirements of Article III, they fail to plead that this Court has subject matter jurisdiction over the mandamus claim against the Secretary and Attorney General. Accordingly, this Court should dismiss this case for lack of jurisdiction.

### A. Petitioners lack Article III standing.

Article III limits federal courts to the consideration of "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1. The standing doctrine "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the standing inquiry, the plaintiff "must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan*, 504 U.S. at 560–61). "[W]hen plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are 'certainly impending.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). The party invoking federal jurisdiction bears the burden of establishing standing at each phase of the litigation. *See Lujan*, 504 U.S. at 561, 570 n.5.

Neither United Sovereign Americans nor the individual Petitioners have standing under Article III. In fact, a federal district court recently dismissed

similar claims for lack of standing. *See Md. Election Integrity, LLC v. Md. State Bd. of Elections*, No. CV SAG-24-00672, 2024 WL 2053773, at *3–4 (D. Md. May 8, 2024). In that case, United Sovereign Americans and a related entity, Maryland Election Integrity, Inc., brought claims complaining of violations of election law in the 2020 General Election and the 2022 Midterm Election. *See id.* at *1–2. The district court concluded that United Sovereign Americans lacked injury because the alleged harm suffered by the organization was "'simply a setback to the organization's abstract social interests' rather than a 'concrete and demonstrable injury to the organization's activities.'" *Id.* at *3 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Nor could the organizations pursue their claims under a theory of associational standing. *See id.* The complaint failed to plead that the identified member had suffered a personal injury and instead relied on vague claims of voter dilution. *See id.*

So too here. The individual Petitioners cannot show that they have suffered a particularized or concrete injury. Petitioner Kevin Moncla is not even a registered voter in or resident of Georgia. *See* Am. Pet. ¶ 86. His sole "injury" appears to be that he has complained of alleged "improper certification of the 2022 Fulton County election." *Id.* To the extent that Moncla and the other Petitioners allege that they and the general public are injured by Georgia's alleged failure to act in accordance with federal and state election

9

law, *see* Am. Pet. ¶ 202 ("Petitioners seek redress from the constitutional harm brought upon them, and the Georgia electorate at large, by Respondents failure to comply with federal and state election law."), ¶ 217 ("Petitioners believe and therefore aver the Respondents have lost control of voter registration, leading to the distribution of ballots to what appear to be false registrants which results in a diluted vote and further harm to petitioners and the electorate at large."), that is no particularized injury at all.  A particularized injury "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotation omitted). The Supreme Court and Eleventh Circuit have been clear that these exact sorts of generalized allegations are insufficient to confer standing on a plaintiff. *See Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) ("[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." (quotation omitted)); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) ("A generalized grievance is 'undifferentiated and common to all members of the public.'" (quoting *Lujan*, 504 U.S. at 575)). As the Eleventh Circuit explained in rejecting a standing argument based on generalized vote dilution:

> Wood cannot explain how his interest in compliance with state
> election laws is different from that of any other person. Indeed, he
> admits that any Georgia voter could bring an identical suit. But
> the logic of his argument sweeps past even that boundary. All

> Americans, whether they voted in this election or whether they reside in Georgia, could be said to share Wood's interest in ensuring that a presidential election is properly administered.

*Id.* (quotations omitted; alternations adopted). As in *Wood*, any member of the public could be said to share the individual Petitioners' concerns, making this precisely the type of generalized grievance rejected by the Eleventh Circuit. None of the individual Petitioners alleges how their personal vote or personal candidacy was affected by any of the alleged violations of election law.

Nor does the Petition raise any imminent future injuries to the individual Petitioners that could justify prospective mandamus relief. Although the Petition purports to be solely forward-looking in the relief that it seeks, *see* Am. Pet. ¶ 21, it fails to identify any concrete, imminent future injuries. The Petition focuses primarily on complaints concerning "potential" or "apparent" errors in the 2020 General Election and the 2022 Midterm Election, *see id.* ¶ 45 ("Petitioners seek redress from these voter registration apparent errors, relief from blatantly inaccurate voter registration rolls, relief from discrepancies between votes cast and actual votes reported, and relief from extreme voting errors generally . . . ."), which Petitioners specifically state they are not challenging in this action, *see id.* ¶ 21. Petitioners even "agree that it is possible that in every federal contested election supervised and certified by the state of Georgia in 2022 the 'winner' received more votes than

the 'loser.'" *Id.* Accordingly, it is difficult to understand how Petitioners have suffered any past harm, let alone face a risk of imminent future harm. And indeed, the Petition barely addresses the risk of future injury at all, merely alleging that "it is reasonable to believe that systemic issues which occurred in the 2022 combined Federal and state election in Georgia will continue uncorrected in 2024, 2026, 2028, etc. absent intervention by this Court." Am. Pet. ¶ 23. But as the Eleventh Court has observed, "the Supreme Court [has] made clear that past occurrences of unlawful conduct do not establish standing to enjoin the threat of future unlawful conduct." *City of S. Miami v. Governor*, 65 F.4th 631, 637 (11th Cir. 2023); *see also Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (allegations of past elections mistakes do not "create standing to obtain an injunction against the risk of future unlawful conduct").

United Sovereign Americans lacks organizational standing.[3] To establish organizational standing, United Sovereign Americans would need to establish that it suffered a cognizable injury in its own right. *See City of S.*

---

[3] The Petition does not allege that any of the individual Petitioners are members of United Sovereign Americans or that United Sovereign Americans purports to represent any individual members. But even if it did, United Sovereign Americans lacks associational standing because its members lack individual standing in their own right. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).

*Miami*, 65 F.4th at 638–39. The Petition fails to do so. In fact, it is unclear what injury United Sovereign Americans is alleged to have suffered. To the extent that United Sovereign Americans is pursuing standing under a diversion of resources theory, that is insufficient. United Sovereign Americans alleges that it has conducted "expert data analysis" of voter registration data from the 2022 Midterm Election. Am. Pet. ¶¶ 164–177. "But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). To hold otherwise would "mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* at 395; *see also City of S. Miami*, 65 F.4th at 638 ("[A]n organization can no more spend its way into standing based on speculative fears of future harm than an individual can." (quoting *Shelby Advocs.*, 947 F.3d at 982)). Nor can United Sovereign Americans establish standing by asserting that it "is not seeking a distinct form of relief from the other Petitioners and therefore has standing," Am. Pet. ¶ 94, because, as explained, the other Petitioners do not have standing.

In short, the Petition is a collection of complaints regarding alleged deficiencies and alleged violations of federal and state election law in two prior elections. Neither the individual Petitioners nor United Sovereign Americans can establish that they have suffered a concrete, personalized injury or that such an injury is imminent.

### B. Petitioners have no basis for federal jurisdiction under the All Writs Act or any other statute.

Petitioners' claim must also be dismissed because the Petition fails to identify any source of subject matter jurisdiction over the mandamus claim against the Secretary and Attorney General. Petitioners argue that this Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651, or under the federal mandamus statute, 28 U.S.C. § 1361. *See* Am. Pet. ¶¶ 73–74. In fact, neither statute endows this Court with jurisdiction.

Pursuant to Section 1651(a), "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." But it is "settled that this section, known as the All Writs Act, by itself, creates no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent

ground." *Brittingham v. U.S. Comm'r*, 451 F.2d 315, 317 (5th Cir. 1971)[4]; *see Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, 44 F.4th 1326, 1334 (11th Cir. 2022) ("[The All Writs Act] allows courts to protect the jurisdiction they already have, derived from some other source, but it does not create any substantive federal jurisdiction." (quotations and citations omitted)). The All Writs Act therefore cannot be a basis for federal jurisdiction over any mandamus claim against the Secretary or the Attorney General.

Any argument that Section 1361 provides a basis for jurisdiction falls similarly flat. The federal mandamus statute gives district courts only "original jurisdiction of any action in the nature of mandamus to compel an *officer or employee of the United States* or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). Accordingly, "a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Moye v. Clerk, DeKalb Cnty. Superior Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973); *see also Lamar v. 118th Jud. Dist. Ct. of Tex.*, 440 F.2d 383, 383 (5th Cir. 1971); *Bailey v. Silberman*, 226 F. App'x 922, 924 (11th Cir. 2007); *Church of Scientology of Ga., Inc. v. City of Sandy Springs*,

---

[4] Decisions of the former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

843 F. Supp. 2d 1328, 1380 (N.D. Ga. 2012) ("Federal district courts do not have the authority to issue writs of mandamus to direct state officials in the performance of their duties."); *Webster v. Matthis*, No. CIV.A. 1:07-CV-0500, 2007 WL 879587, at *1 (N.D. Ga. Mar. 20, 2007); *Carnage v. Sanborn*, 304 F. Supp. 857, 858 (N.D. Ga. 1969). Plaintiffs argue that despite this well-settled body of law, this Court should exercise jurisdiction over Petitioners' mandamus claim against the Secretary and Attorney General as "quasi-federal officer[s]". Am. Pet. ¶ 226. As best Respondents can understand, Petitioners are suggesting that because Article 1, Section 4 of the United States Constitution endows the states with certain powers to determine how congressional elections are to be held, and because the Georgia General Assembly has delegated certain responsibilities to the Secretary and Attorney General, they are acting as "quasi-federal officials." *Id.* ¶ 225; *see also id.* ¶ 223 & n.11. That is nonsense. Petitioners cite no authority for that proposition, which is entirely antithetical to the principles of federalism and state sovereignty.

Petitioners next claim that this Court has federal question jurisdiction under 28 U.S.C. § 1331, *see* Am. Pet. ¶ 75, but the Petition does not properly plead any federal question. Although Petitioners discuss the NVRA and HAVA at length, *see* Am. Pet. ¶¶ 111–140, they are clear that they are not bringing

16

any claims under either statute, *see id.* ¶¶ 200–229.[5] Nor could they. HAVA does not create a private cause of action. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008); *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) ("HAVA creates no private cause of action").[6] The NVRA does provide for a private right of action seeking declaratory or injunctive relief. *See* 52 U.S.C. § 20510(b). But a claim under the NVRA requires notice be sent to a state's election official before filing a claim, *see id.* § 20510(b)(1), and the Petition does not allege that Petitioners gave any such notice. Moreover, Petitioners dismiss this remedy as "toothless," Am. Pet. ¶ 119, and concede that the type of declaratory or injunctive relief available under the NVRA would be "inapplicable or inappropriate in this issue because the harm from the 2024 election is not yet realized," *id.* ¶ 214. Nor can Petitioners bootstrap federal jurisdiction over the Secretary and the Attorney General using their claim against United States Attorney General Merrick Garland under Section 1361. The sole claim against the Secretary and Attorney General is one for

---

[5] In its Prayer for Relief, the Petition briefly requests that the Court halt certification of the 2024 General Election "pursuant to permissible causes of action under NVRA and HAVA." Am. Pet. at 44. But no cause of action under either statute affords the Court such power, no is there any private right of action through with Petitioners could request that this Court do so.
[6] Petitioners argue that the First Circuit has recognized a private right of action under HAVA through § 1983. *See* Am. Pet. ¶ 136. But the Eleventh Circuit has refused to recognize such a right of action, and in any event, the Petition does not plead any § 1983 claim.

mandamus relief under the All Writs Act, which as explained is not an independent source of federal jurisdiction.

Finally, Petitioners assert that this Court has supplemental jurisdiction because their "state claims are so related to the federal claims that they form part of the same case or controversy." Am. Pet. ¶ 75 (citing 28 U.S.C. § 1367). This is confusing because the Petition brings no state law claims. But even if it did (or even to the extent that the Petitions references to Georgia election law constituted some cause of action), Petitioners have identified no basis for federal jurisdiction and therefore cannot take advantage of supplemental jurisdiction. *See Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1565 (11th Cir. 1994) ("A case may not be brought in federal court on the grounds of supplemental jurisdiction alone.").

Accordingly, this Court does not have jurisdiction over Petitioners' mandamus claim against the Secretary or the Attorney General, and that claim must be dismissed.

## II.    Petitioners' claims are barred by the Eleventh Amendment.

The Eleventh Amendment bars suit against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). States are generally immune from suit "regardless of the

18

nature of the relief sought." *Pennhurst*, 465 U.S. at 100. Because claims against public officials in their official capacities are merely another way of pleading an action against the entity of which the officer is an agent, "official capacity" claims against a state officer are included in the Eleventh Amendment's bar. *Graham*, 473 U.S. at 169.

While an exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123 (1908), it is limited to suits against state officers for *prospective* injunctive relief.[7] *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997). "In *Young*, the Court held that a federal court has jurisdiction over a suit against a state officer to enjoin official actions that violate federal law, even if the State itself is immune from suit under the Eleventh Amendment." *Idaho v. Coeur d' Alene Tribe*, 521 U.S. 261, 288 (1997)

---

[7] Two other exceptions exist that are not relevant to this action. First, Congress could override the State's immunity with "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Pennhurst*, 465 U.S. at 99 (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). The All Writs Act, which is the sole basis for liability against Secretary or the Attorney General and "which is itself limited by the jurisdiction of the federal courts, cannot be used to circumvent or supersede the constitutional limitations of the Eleventh Amendment." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 340 (2d Cir. 1985). Second, Petitioners could demonstrate that the State consented to being sued through "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985). The State has not given its consent.

(O'Connor, J., concurring). However, Petitioners are clear that they only seek relief in the nature of mandamus and expressly disclaim that they are seeking any type of injunctive relief: "Petitioners argue that an injunctive and/or declaratory relief is inapplicable or inappropriate in this issue . . . ." Am. Pet. ¶ 242.

But even to the extent that *Ex parte Young* applies, two limitations to this exception to Eleventh Amendment immunity are applicable in this case. First, "[a] federal court cannot award *retrospective* relief, designed to remedy past violations of federal law." *Coeur d'Alene Tribe*, 521 U.S. at 288 (O'Connor, J., concurring) (emphasis added). Second, "[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party." *Ex parte Young*, 209 U.S. at 157. Both limitations apply in this case.

First, although Petitioners disclaim that they are seeking any retrospective relief, *see* Am. Pet. ¶ 21, the Petition focuses almost exclusively on alleged violations of election law that occurred during the 2020 General Election and the 2022 Midterm Election. To the extent that Petitioners are

seeking to remedy any past violation, such relief is clearly barred by the Eleventh Amendment.

Second, the Petition lacks any specific factual allegations connecting the Secretary and the Attorney General as individual officers to the alleged violations of HAVA or the NVRA. An official's connection to the enforcement of the provision must be fairly direct for *Ex Parte Young* to apply. *See Ex Parte Young*, 209 U.S. at 157; *see also Coal. To Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (the connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit"); *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021) ("[T]he officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges"). Here, Petitioners rely entirely on the Attorney General's duty to oversee "enforcement and prosecution of state law." Am. Pet. ¶ 71. They make no attempt to connect him the alleged violations of HAVA and the NVRA. With respect to the Secretary, Petitioners correctly identify Secretary Raffensperger as the chief election official for the State. *See* Am. Pet. ¶ 70. But that is the extent of the Petition's allegations concerning the Secretary's connection to the alleged violations of election law. The Petition implies that as chief election official, Secretary Raffensperger has the final say as to all election activity in

Georgia. Not so. For example, it is the county board of registrars of each county who are "charged with the duty of examining from time to time the qualifications of each elector of the county", O.C.G.A. § 21-2-228(a), and the county registrars who are responsible for removing the names of electors determined to be unqualified from the voter rolls, *see* O.C.G.A. § 21-2-228(e). Nevertheless, the Petition makes numerous references to alleged injuries caused by alleged failures to properly maintain Georgia's voter rolls and attributes these to the Secretary's general supervisory role. The Petition makes no specific allegations connecting the alleged violations to the Secretary's statutory powers or responsibilities.

Indeed, the Petition makes clear the Secretary and the Attorney General are merely stand-ins for the State. The Petition makes references throughout the Petition that it is the State of Georgia that is allegedly harming them:

- "The risk of election subversion is indisputable, but the *state of Georgia* has denied Petitioners denied a fair hearing [sic] . . . ." Am. Pet. ¶ 52 (emphasis added);

- "Petitioners believe and therefore aver that *the state of Georgia* cannot demonstrate effective control over voter eligibility in conformity with federal or state requirements, and *the state of Georgia* has implemented a system that does not guarantee accuracy or compliance with legal mandates requiring the state to ensure that only eligible voters may register and vote." *Id.* ¶ 147 (emphasis added);

- "Petitioners believe and therefore aver that the *state of Georgia's failure* to follow the law has resulted in election outcomes that are untrustworthy." *Id.* ¶ 219 (emphasis added).

Petitioners cannot establish that their claim against the Secretary or Attorney falls into the *Ex parte Young* exception. Indeed, the Petition only reinforces that Petitioners are in fact attempting to sue the State. Accordingly, Petitioners' claims are barred by the Eleventh Amendment.

## III.   Petitioners have failed to state a claim for mandamus.

This Court need not address the merits of Petitioners' claim for mandamus relief because it lacks jurisdiction over the Secretary and the Attorney General and because Petitioners' claims are barred by the Eleventh Amendment. But even if this Court could hear Petitioners' claims, the Petition fails to state a claim for mandamus under the All Writs Act.

As explained, Petitioners cannot state a cause of action because the All Writs Act does not create a private right of action or create federal jurisdiction. *See supra* Sec.I.B. It merely permits federal courts to "issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). Nor are the Secretary and Attorney General subject to the federal mandamus statute. *See supra* Sec.I.B.

Second, Petitioners cannot demonstrate that they are entitled to a writ of mandamus. A writ of mandamus is appropriate where: "(1) no other

adequate means exist to attain the relief, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (emphasis added) (quotation omitted). Aside from their conclusory statements that they seek a writ compelling "ministerial" actions from Respondents, Petitioners have failed to set out that they have a "clear and indisputable" right to the relief that they seek. Petitioners allege that past violations of the HAVA and the NVRA justify their request for a sprawling writ essentially giving Petitioners and this Court oversight of Georgia's 2024 General Election. Petitioners seek a writ ordering that: (1) Respondents "ministerially correct" errors in the 2022 elections data, identify why those errors occurred, and prevent recurring errors; (2) Respondents "may not certify the 2024 General Election;" (3) Respondents "submit voter registration requests . . . to the Department of Homeland security to verify" citizenship of registrants; and (4) Respondents "perform their duties as the law intended." Am. Pet. at 44–45 (prayer for relief). None of these requests are appropriate for a writ of mandamus, and nothing in the cited provisions of HAVA or the NVRA gives Petitioners the legal right to them. Such requests are also clearly not "appropriate under the circumstances." In fact, the Supreme Court has recognized that last-minute "[c]ourt orders affecting elections . . . can

themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).

## CONCLUSION

For the forgoing reasons, Secretary Raffensperger and General Carr respectfully request that this Court dismiss the Amended Petition.

This 16th day of October, 2024.

Respectfully submitted,

CHRISTOPHER M. CARR          112505
Attorney General

*/s/ Bryan K. Webb*
BRYAN K. WEBB               743580
Deputy Attorney General

*/s/ Elizabeth T. Young*
ELIZABETH T. YOUNG          707725
Senior Assistant Attorney General

*Attorneys for Secretary of State Brad Raffensperger*

Please address all
communications to:
Elizabeth T. Young
Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
Telephone: (404) 458-3425
Email: eyoung@law.ga.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **MOTION TO DISMISS OF SECERTARY OF STATE BRAD RAFFENSPERGER AND ATTORNEY GENERAL CHRIS CARR** with the Clerk of Court using the CM/ECF e-filing system, which will send notification of such filing to the parties of record via electronic notification.

Dated: October 16, 2024.

*/s/ Bryan K. Webb*
Bryan K. Webb
Deputy Attorney General
*/s/ Elizabeth T. Young*
Elizabeth T. Young
Senior Assistant Attorney General