**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA,
BRUNSWICK DIVISION**

UNITED SOVEREIGN AMERICANS, INC.
167 Lamp and Lantern
Village Suite 194
Chesterfield, MO 63017

   *And*

MARY BENEFIELD
2065 Lavista Circle
Tucker, GA 30084

   *And*

CHARLICE BYRD
1417 Olde Forge Lane,
Woodstock, GA 30189

   *And*

LYDIA ANNE GREEN DAVIDSON
3731 Starboard Ct,
Ackworth, GA 30102

   *And*

DEBORAH J. DAVIS
200 Morris Hill Road
Canton, GA 30114

   *And*

DAVID A. CROSS
4805 Spring Circle
Suwanee, GA 30024

   *And*

MARK DAVIS
325 Westfork Way

CIVIL ACTION


Case No.: 2:24-cv-00104

1

Suwanee, GA 30024

*And*

KEVIN M. MONCIA
911 Wilkenson Street,
Shreveport, LA 71104

   *And*

FRANK H. SCHNEIDER
5865 Camp Chase
Cumming, GA 30040

                *Petitioners,*

v.

BRAD RAFFENSPERGER, IN HIS
OFFICIAL CAPACITY AS THE
SECRETARY OF STATE OF GEORGIA
214 State Capitol
Atlanta, GA 30334

   *And*

CHRIS CARR, IN HIS OFFICIAL
CAPACITY AS THE ATTORNEY
GENERAL OF GEORGIA
47 Trinity Street, SW
Atlanta, GA 30334

   *And*

MERRICK GARLAND, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF
THE UNITED STATES
950 Texas Avenue NW
Washington DC 20530

              *Respondents.*

# **Table of Contents**

TABLE OF AUTHORITIES ..........................................................................................4

I.    SUMMARY OF THE ARGUMENT ...............................................................7

II.   ARGUMENT ..................................................................................................9

   A.   The Amended Complaint contains allegations sufficient to invoke federal jurisdiction.....9

   B.   Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection

   by virtue of the *Ex parte Young* exception..............................................................15

   C.   Petitioners have stated a valid claim under the All Writs Act, as the state election agency

   becomes a quasi-federal agency subject to Congressional oversight when regulating and

   administering federal elections, and therefore *mandamus* relief under the All Writs Act is the

   only remedy available to adjudicate Petitioners' claims. .......................................17

III.  CONCLUSION ..............................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Anderson v. United States,*
    417 U.S. 211 (1974)………………………………………...……………18

*Baker v. Carr,*
    369 U.S. 186 (1962)………………………………………………………10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).. ………………………………………………….……9

*Cheney v. United States Dist. Ct.,*
    542 U.S. 367 (2004)……………………………………………………20, 21

*CompuSpa, Inc. v. IBM,* 228
    F. Supp. 2d 613 (2002)…………………………………………….…………9

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)………………………………………….…..………9, 10

*Curling v. Sec'y of Georgia,*
    761 F. App'x 927 (11th Cir. 2019) ……………………………………………15

*Duke Power Co. v. Carolina Environmental Study Group, Inc.,*
    438 U.S. 59 (1978)…………………….…………………………………...11

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ………………….…………………………………15

*Ex parte Young,*
    209 U.S. 123 (1908)…………………………………………………..7, 15, 16, 20

*Federal Election Comm'n v. Akins,*
    524 U.S. 11 (1998)…………………………………...………...…..……10

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)……………………………………………………11

*Georgia Republican Party v. Sec. & Exch. Comm'n,*
    888 F.3d 1198 (11th Cir. 2018)…………….……………….……………...…12

*Gill v. Whitford,*
    585 U.S. 48 (2018)……………………….……………………….……..……10

*Gomillion v. Lightfoot,*
    364 U.S. 339 (1960)……………………………………………………..…………18

*Gray v. Sanders,*
    372 U.S. 368 (1963)……………………………………………...…………10, 18

*Green v. Mansour,*
    474 U.S. 64 (1985) ……………….…………………………………...…………15, 16

*Grizzle v. Kemp,*
    634 F.3d 1314 (11th Cir. 2011)……...…………………………...…….…15, 20

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)……………………………………….…………..…………11

*Hollingsworth v. Perry,*
    558 U.S. 183 (2010)………………………………………….………………..20

*Idaho v. Coeur d'Alene Tribe,*
    521 U.S. 261 (1997)…………………...……………………………15, 16

*In re: Coy,*
    127 U.S. 731 (1888)…………………………………………….……18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)………………………………………….……..7, 9, 10

*Massachusetts v. Envtl. Prot. Agency,*
    549 U.S. 497 (2007)………………………………………….……………11

*Oregon v. Mitchell,*
    400 U.S. 112 (1970)……………………………………………...18

*Reynolds v. Sims,*
    377 U.S. 533 (1964)…………………………………….………..………18

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)…………………………….……………...……9

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)…………………………………….………..……11

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.,*
    535 U.S. 635 (2002)…………………………………….…………8

*Wilbur v. United States*,
  281 U.S. 206 (1930)……………………………………….…………………..21

**Statutes**                                                    **Page(s)**

28 U.S.C. § 1651(a)……………………………………...………………….20

52 U.S.C. § 20501……………………………………………...…………….8

52 U.S.C. §§ 20501(b)(3)-(4)……………………………………………….19

52 U.S.C. § 20507(a)(4)………………………………………………….….19

52 U.S.C. § 21081(a)(1)(A)(ii)……………………………………...………19

52 U.S.C. § 21081(a)(5)……………………………………………………..19

52 U.S.C. § 21083(a)(1)(A)……………………………………...…….…….19

52 U.S.C. § 20901……………………………………………………………8

Ga.Code Ann. § 21–2–30(a) & (d)……………………………...…………..17

**Other Authorities**                                          **Page(s)**

U.S. Const. art. I, § 4……………………………………………………8, 17, 18

U.S. Const. art. I, § 8, cl. 18……………………………...………………….18

## I.  SUMMARY OF THE ARGUMENT

Respondent Georgia Secretary of State Brad Raffensperger[1] asserts that this Court lacks subject matter jurisdiction in the above-captioned matter because Petitioners United Sovereign Americans, Inc. (hereinafter "USA") and Mary Benefield, Charlice Byrd, Lydia Anne Green Davidson, David Cross, Mark Davis, Kevin Moncia, and Frank H. Schneider (hereinafter "Petitioners") lack standing to bring this claim. A complaint must simply allege standing; standing need not be proven at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing ultimately requires injury, causation, and redressability, all of which are alleged in the Amended Complaint. Qualified voters have constitutionally protected voting rights, and that an official's failure to adhere to state and federal election laws amounts to a deprivation of that legally protected interest. These principles fit squarely within the purview of Petitioners' allegations. Petitioners alleged actions by Respondent which caused injury to their right to vote. As further explained below, the Amended Complaint appropriately alleges a particularized injury and imminent risk of future harm rather than a generalized grievance shared by the community. Petitioners respectfully suggest they possess standing to invoke federal jurisdiction.

Respondent also contends that Petitioners' claims are barred by the Eleventh Amendment, which in most instances state officials are afforded sovereign immunity. However, Eleventh Amendment sovereign immunity is subject to several exceptions, including that established by the Supreme Court in *Ex parte Young*. 209 U.S. 123 (1908). The *Young* exception properly permits lawsuits against state agencies where a plaintiff alleges an ongoing violation of federal

---

[1] To the extent the Georgia Attorney General and United States Attorney General does not have a role in the time, place, and manner of federal elections, nor in their conduct, within Georgia, Plaintiffs concur that the claim against both Attorneys General should be dismissed.

law and seeks prospective relief as a means of addressing that violation. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Here, the *mandamus* relief Petitioners request in the Amended Complaint is prospective, and therefore *Young* does not allow Respondent to invoke Eleventh Amendment sovereign immunity as a means of precluding Petitioners' claims.

Lasty, Respondent contends that Petitioners have failed to state a valid claim under the All Writs Act because the requested relief is not "in aid of" a matter over which this Court has jurisdiction, *mandamus* is not "necessary or appropriate" to resolve Petitioners' claims, and such exceeds the permissible scope of a writ of *mandamus*. Insofar as Respondent argues that he need not comply with Congressional mandates simply because they are state officials, this is a case, then, of first impression, and accordingly the cases cited in support of Respondent's argument offer little guidance. By including language in the Elections Clause, U.S. Const., art. I, § 4, the authors or "Framers" of the Constitution reserved to Congress the ultimate authority to regulate federal elections conducted by the several states. Congress has exercised this power to supersede the states through legislation such as the National Voter Registration Act[2] (*hereinafter* "NVRA"), and the Help America Vote Act[3] (*hereinafter* "HAVA"). Further, by enacting the All Writs Act, Congress created an enforcement mechanism by which federal courts become empowered to compel state election agencies to comply with mandates of Congress in the supervision of federal elections. Petitioners assert that a state election agency supervising federal elections becomes a quasi-federal agency, and thus is subject to Congressional oversight enforced by federal courts when carrying out any election-related duties delegated to them by the state legislature to

---

[2] 52 U.S.C. §§ 20501 *et seq.*
[3] 52 U.S.C. §§ 20901 *et seq.*

regulate and administer federal elections. This crucial departure from the concepts of dual sovereignty and federalism makes a writ of *mandamus* both appropriate *and* necessary to properly adjudicate Petitioners' claims that the state election agency has failed in its duty.

## II. <u>ARGUMENT</u>

In response to a Motion to Dismiss, a Petitioner is not required to prove factual allegations to overcome a 12(b)(6) motion. *CompuSpa, Inc. v. IBM*, 228 F. Supp. 2d 613, 624-625 (2002). "To survive a motion to dismiss, the factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This Court should deny the Respondent's Motion to Dismiss because this Court has subject matter jurisdiction over Petitioners, and Petitioners submitted a well pleaded Amended complaint.

### A. The Amended Complaint contains allegations sufficient to invoke federal jurisdiction

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan, 504 U.S. at 560-561*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the "plaintiff in a personal and individual way."

*Lujan*, 504 U.S. at 560. See *Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S. at 409.

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders,* 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing.  Generalized grievances in the context of standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote did not amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights…" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id.* In

*Massachusetts v. Envtl. Prot. Agency*, the "…EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Id.* at 498-499. Further, the Court reasoned that there is a substantial likelihood that the relief requested would prompt the EPA to reduce the risk. *Massachusetts v. E.P.A*., 549 U.S. 497, 521 (2007)(citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 79 (1978). Here, the harms implicating voting rights are arguably widespread (as, *arguendo*, are the effects of greenhouse gas emissions). In addition, this Court's involvement is the only solution that would aid in Petitioners request to prompt Respondent to evaluate and correct the voter discrepancies. Thus, Petitioners complaining of election-related injuries from Respondent also have standing to seek review by federal courts under Article III, just as did those seeking relief in the cases cited above.

The Supreme Court has stated that when a plaintiff is a group or organization representing several persons with similar injuries, such "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Summers v. Earth*

*Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *see Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1204 (11th Cir. 2018).

The Amended Complaint here alleges standing sufficient to establish subject-matter jurisdiction under Article III. Plaintiff Mary Benefield is a registered voter in Georgia who discovered someone attempted to steal her vote by using false identification, she reported the incident immediately. If Petitioner did not discover this error, her right to vote would have been effectively stolen from her, raising questions of the legality of other votes cast in 2022 and future elections. Petitioner Charlice Byrd is a Georgia voter and state representative seeking reelection in 2024 whose occupation is decided by the election, if the inaccuracies are not corrected, his very occupation would be lost due to the State's failure to correct inaccuracies causing a direct harm. Deborah Davis is a registered Georgia voter who filed a complaint because a third party processed absentee and mailed in ballots instead of a sworn Georgia absentee clerk. The improper monitoring of absentee and mailed in ballot counts directly affects the Petitioners and dilutes their votes. Davis Cross is a registered Georgia voter who provided proof and notice that the vote tally in Fulton and Gwinnett Counties was overstated and discovered the electronic voter certification system was not certified by the United States Election Assistance Commission. This notice has been brought to Respondent Secretary of State's attention who took no corrective action. Petitioner Mark Davis, a registered voter in Georgia who has analyzed voter data for more than 30 years, identified thousands of voter registration irregularities in Georgia's Voter Database. Petitioners Lydia Davidson and Frank Schneider are registered voters whose votes were effectively diluted due to the inaccurate votes cast in 2022 and the likelihood of harm in 2024 and other elections.

All of these Petitioners suffered injury and are likely to suffer injury again in 2024 if the court does not demand proper election protocol is followed. Petitioner USA's interests at stake relate to the heart of USA as its mission is to ensure all Unites States elections are fair, accurate, and trustworthy; the very heart of Petitioners' claims. Finally, the claim set forth in this matter is not for an individual of the organization, rather it is for the benefit of all legally registered voters, protecting their votes against the dilution that occurred in 2022, and prevent further voter inaccuracies in future federal elections regulated by the State of Georgia

Respondent's assertion that Petitioners lack standing by virtue of Petitioners' failure to assert a legally cognizable injury, and likelihood of *future* harm in *subsequent* federal elections administered by Respondent, ignores the factual allegations Petitioners have plainly stated in the Amended Complaint. Petitioners contend they are entirely reasonable in fearing that the demonstrated and pled issues which occurred in the 2022 federal election in Georgia will reoccur since Respondent and Georgia election officials, as alleged in the Amended Complaint, have done *nothing* to correct those errors despite notice, again, as specifically alleged in the Amended Complaint.

Turning to the issue of whether Petitioners' injury constitutes simply a generalized grievance shared by the whole community, Petitioners suggest it was not the whole community that sent written inquiries to agents of Respondent requesting transparency as to Georgia's compliance with federal election laws and explanations regarding documented voter and registration irregularities. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls, Petitioners did that. The whole community did not create a comprehensive report on apparent registration and voting violations, Petitioners did. Petitioners, *not* Respondent, informed the whole community of these

issues, and the whole community could not have realized them on its own. Petitioners themselves took these actions which distinguishes Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple and specific allegations concerning, *inter alia*, discrepancies in voting records, which suggest that this is not merely a speculative issue, but a very real problem causing Petitioner and Petitioner's members legitimate concerns over whether Georgia is counting and considering their votes in such a way that Petitioners' votes are undiluted.

In sum, for purposes of a Motion to Dismiss, the Amended Complaint states a sufficiently plausible cause of action at the early stages of litigation to confer presumptive standing upon Petitioners. Petitioners set forth in the Amended Complaint a series of factual allegations establishing, if true, that the named Petitioners are individuals qualified to vote in Georgia whose votes were diluted in 2022 through Respondent's failure to ensure that Georgia's voting systems and voter registration records met certain federal standards prior to certification. Though Respondent received notice of these apparent errors, they did not take sufficient (or any) actions to investigate the cause for these apparent errors reasonably leading Petitioners to believe that the same or similar apparent errors will recur in 2024, 2026, and in every subsequent federal election if Respondent fails to investigate and, where warranted, correct these anomalies going forward. Thus, the Amended Complaint is not moot due to the cyclical nature of the election process. If the errors identified are not corrected, election integrity will continue to be called into question. Petitioners have identified said anomalies and have pled they brought them to the attention of Georgia election officials who bear the responsibility delegated by the General Assembly to regulate federal elections. No other means exist in the law to require a government official to perform his duties apart from a writ of *mandamus*.

Petitioners have brought this action in an effort to require, through court order, the Secretary of state of Georgia to investigate and take appropriate action concerning the apparent errors Petitioners have brought to Respondent's attention. Petitioners do not seek this Court to order Respondent *how* to perform his job. Petitioners seek court intervention to require Respondent simply to *do* his job and take whatever action Respondent considers appropriate in order to comply with Congressional mandates. Petitioners contend the Court ought to order Respondent to report to the Court's satisfaction the reasons for such significant discrepancies, for example, how it is possible that in 2022, various Georgia county boards of elections could possibly have certified a federal election where more votes were counted than ballots cast? Petitioners suggest they have satisfied the injury-in-fact requirement under Article III, in order to confer subject-matter jurisdiction upon this Court in order to seek the requested relief.

**B. Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection by virtue of the *Ex parte Young* exception.**

The Eleventh Amendment affords sovereign immunity to government entities, subject to several exceptions. *Grizzle v. Kemp,* 634 F.3d 1314, 1319 (11th Cir. 2011). Ordinarily, then, citizens are precluded from filing federal lawsuits against state officials. *Id.* Plaintiffs may sue state officials in their official capacities when they seek *prospective* equitable relief to end *continuing* violations of federal law. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997). The Supreme Court has explained that "*Ex parte Young* 'gives life to the Supremacy Clause,' *Green v. Mansour*, 474 U.S. 64, 68 (1985), and has armed plaintiffs with the 'sword' of the 'Civil War Amendments' to contest ongoing violations by the states." *see Edelman v. Jordan*, 415 U.S. 651, 664 (1974). *Curling v. Sec'y of Georgia*, 761 F. App'x 927, 931 (11th Cir. 2019)

In *Young*, the Supreme Court created a mechanism by which officials and government entities ordinarily afforded Eleventh Amendment protections are stripped of sovereign immunity.

Because the enforcement of "an unconstitutional statute is void, and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States," the Supreme Court has held that the officer is not entitled to protection by the state's sovereign immunity. *Green v. Mansour*, 474 U.S. 64, 68 (1985) (quoting *Ex parte Young*, 209 U.S. at 160, 28 S.Ct. 441); *see also Coeur d'Alene*, 521 U.S. at 288 (O'Connor, J., concurring) ("The *Young* doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity.").

In support of his sovereign immunity argument, Respondent briefly discusses the *Young* doctrine. Respondent avers *Young* is inapplicable to Petitioners' claims on the basis that Petitioners do not seek *injunctive* or *declaratory* relief, completely ignoring the nature of *mandamus*. Petitioners argue that *mandamus* relief and injunctive relief are functionally equivalent in the *Young* context, as both are forms of equitable relief and each form of relief is prospective in nature. As such, Petitioners contend that the Supreme Court, through *Young* and its progeny, did not mean to apply the exception to plaintiffs seeking declaratory and/or injunctive relief to the exclusion of those requesting other equitable relief such as that Petitioners seek here through the more precise *mandamus*.

It defies logic that Respondent contends, essentially, that since relief in *mandamus* is not the same as relief by injunction, the *Young* exception does not apply. Both injunctive relief and *mandamus* relief in the present context would seek this Court to order Respondent to perform its non-discretionary duty, with Petitioners seeking only that equitable relief while at no time alleging monetary damages. Respondent premises his argument on injunctive relief being a different form of relief than *mandamus* relief, but his argument must fail because under the

current factual pattern, the two (2) forms of equitable relief, injunction and *mandamus*, are contexually the same.  Accordingly, by application of the *Young* exception Respondent is not afforded Eleventh Amendment sovereign immunity in this matter

 **C.** **Petitioners have stated a valid claim under the All Writs Act, as the state election agency becomes a quasi-federal agency subject to Congressional oversight when regulating and administering federal elections, and therefore *mandamus* relief under the All Writs Act is the only remedy available to adjudicate Petitioners' claims.**

 Under the Elections Clause, Congress conferred upon the individual legislatures of the several states the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have *presumptive* authority to regulate and administer the election of all elected federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers clearly and unambiguously intended Congress retain the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the default authority to regulate federal elections lies with the several states in the absence of acts of Congress. This makes the states subordinate to Congress should Congress choose to act. The Framers intentionally intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. Accordingly, the Constitution reserves to Congress the ultimate power to regulate federal elections, while simultaneously delegating the presumptive power to individual state legislatures. The Georgia General Assembly has further delegated the state's power to regulate federal elections to Respondent Secretary of State. Ga.Code Ann. § 21–2–30(a) & (d). Respondent Secretary of State though not a federal officer *per se*, Constitutionally and by necessity, became a quasi-federal

agency by act of the Georgia General Assembly. Thus, Respondent is required to carry out both state election statutes *and* federal election statutes passed by Congress, including HAVA and NVRA. In fact, they have no choice but to do so.

While a state agency, generally, is insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes. *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970). Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Georgia's otherwise absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. In doing so, Congress effectively, has deputized the legislature in Georgia to carry out its will.  The Georgia legislature then delegated that responsibility from the Constitution and

Congress to Respondent, thus here making Respondent directly answerable to the will of Congress.

Under HAVA, two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, therefore, is required under the Constitution to uphold the right of the people

to choose their representatives. The requirements of NVRA and HAVA are mirrored in Georgia's election laws.

Election laws as discussed in *Grizzel v. Kemp* are enforced by Georgia's Secretary of State. 634 F.3d 1314, 1319 (11th Cir. 2011). In *Grizzel*, the Court agreed that the Secretary of State, by statute is a member of the state election board and has both the "power and duty to ensure that entities charged with those responsibilities comply with Georgia's election code." *Id.* The Court found that the Secretary of State was a proper party and his duties as an election official fell into the *Young* exception to the Eleventh Amendment immunity. *Id.* "Pursuant to *Ex Parte Young,* "[h]is power by virtue of his office sufficiently connect[s] him with the duty of enforcement to make him a proper party to a suit of the nature of the one now before" this Court. *Id. citing* 209 U.S. at 161." The Secretary of State oversees not only the state elections, in addition oversees the federal elections. Accordingly, the Secretary of State, acting in his capacity as a quasi-federal agency, must ensure compliance with NVRA and HAVA when regulating and administering federal elections. A Writ of *mandamus* is the only existing enforcement mechanism through which Petitioners may seek to hold the Secretary of State accountable to Congress for refusing to comply with Congressional legislative mandates.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to

ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

## III.    <u>CONCLUSION</u>

Based on the forgoing, Petitioner respectfully request that this court deny Respondent's Motion to Dismiss in the above-captioned matter.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: October 30, 2024          Bruce L. Castor, Jr.
                                Counsel for Petitioners

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2024, a copy of the foregoing Petitioners' Response in Opposition to Respondent's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing though the Court's system.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: October 30, 2024

Bruce L. Castor, Jr.
Counsel for Petitioners