IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARY BENEFIELD, *et al.*, <br><br> *Petitioners,* <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, *et al.*, <br><br> *Respondents.* | Civil Action File No.: <br> 2:24-cv-00104-LGW-BWC |

### REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS OF SECRETARY OF STATE BRAD RAFFENSPERGER AND ATTORNEY GENERAL CHRIS CARR

Respondents Brad Raffensperger, in his official capacity as Secretary of State of Georgia (the "Secretary"), and Chris Carr, in his official capacity as Attorney General of the State of Georgia[1] ("General Carr"), respectfully submit this Reply Brief in further support of their Motion to Dismiss the Amended Petition. Petitioners' Opposition to Respondents' Motion to Dismiss, *see* Dkt. 16 ("Opposition"), makes clear that the Amended Petition suffers from multiple fatal flaws. Petitioners cannot establish that the individual Petitioners or United Sovereign Americans, Inc. ("United Sovereign

---

[1] Petitioners agree that General Carr is not a proper respondent to this lawsuit. *See* Opp'n at 7 n.1.

Americans") have suffered any cognizable injury that would confer standing under Article III. Further, because Petitioners' only claim is one for mandamus under the All Writs Act, any relief against Respondents is barred by the Eleventh Amendment. Finally, Petitioners cannot state a claim under the All Writs Act. There is no private right of action under the All Writs Act, and the Act does not provide this Court with an independent source of federal jurisdiction. Even if it did, Petitioners have not properly pled a claim for mandamus or sought proper mandamus relief.

## I. This Court lacks jurisdiction over Petitioners' mandamus claim.

### A. Petitioners lack Article III standing.

Petitioners' arguments in opposition make even clearer what was obvious from the Amended Petition: Petitioners seek to bring this petition for mandamus based solely on generalized grievances and speculative claims of future harm. Accordingly, even if Petitioners could bring a claim for mandamus relief against Respondents in this Court (and they cannot), they have no Article III standing because they cannot satisfy the injury-in-fact requirement.

#### *1. Petitioners have not alleged any concrete, particularized harm.*

Neither the individual Petitioners nor United Sovereign Americans can articulate any particularized harm. Petitioners suggest that all individuals who allege any impairment on their right to vote—no matter how general and

widely shared—automatically have standing in federal court. *See* Opp'n at 10. That argument has been firmly foreclosed by the Supreme Court and the Eleventh Circuit. *See* Dkt. 14 ("Mot.") at 10–12. Petitioners' opposition does not mention *Wood v. Raffensperger*, let alone attempt to distinguish it. That is because Petitioners cannot distinguish it. Generalized grievances, i.e., those that are "undifferentiated and common to all members of the public," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992) (quotations omitted), do not satisfy the standing inquiry simply because they occur in the context of voting, *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020). *Wood* foreclosed the ability to bring suits based on generalized vote dilution in this Circuit because "no single voter is specifically disadvantaged if a vote is counted improperly, even if the error might have a mathematical impact on the final tally and thus on the proportional effect of every vote." *Id.* (quotations omitted).

*Wood* explains how Petitioners' claims of vote dilution differ from the facts of *Baker v. Carr*, 369 U.S. 186 (1962), on which Petitioners rely. *See* Opp'n at 10. *Baker* did not hold, as Petitioners claim, "that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote did not amount to a generalized grievance." *Id. Baker* specifically decided that in "the *racial gerrymandering* and *malapportionment contexts*, vote dilution occurs when voters are harmed compared to 'irrationally favored' *voters from other*

*districts*. *Wood*, 981 F.3d at 1314 (quoting *Baker*, 369 U.S. at 207–08) (emphasis added). Petitioners cannot make a similar claim that they have been disadvantaged compared to other voters. They specifically claim the opposite: "[T]he claim set forth in this matter is not for an individual of the organization, rather it is for the benefit of all legally registered voters." Opp'n at 13.

Petitioners concede that whatever injuries they claim they have sustained would also be sustained by the American public but argue that they are sufficiently particularized, pointing to *FEC v. Akins*, 524 U.S. 11 (1998) and *Massachusetts v. EPA*, 549 U.S. 497 (2007). *See* Opp'n at 10–11. Petitioners' selective quotation of *Akins* is misleading. *Akins* did not hold that voting rights generally are "sufficiently concrete and specific." *Id.* at 10. It held that the "*informational injury here*, directly related to voting, the most basic of political rights, *is sufficiently concrete.*" *Akins*, 524 U.S. at 12 (emphasis added). That informational injury was related to the FEC's refusal to designate a political organization a "political committee," which would have required the organization to comply with certain federal disclosure requirements. *See id.* at 21. The *Akins* plaintiffs were injured by their "inability to obtain information" that would have helped the "evaluate candidates for public office." *Id.* Petitioners allege nothing more than a "widely shared" injury of an "abstract and indefinite nature" that *Akins* rejects—a generic allegation that the State

4

has failed to adequately enforce its election laws, causing generic vote dilution. *Id.* at 23. And the standing inquiry in *Massachusetts v. EPA* turned on the "special solitude" and "special position and interest" held by the plaintiff—the State of Massachusetts. 549 U.S. 497, 518–20 ("We stress here . . . the special position and interest of Massachusetts. It is of considerable relevance that the party seeking review here is a sovereign State and not, as it was in *Lujan*, a private individual.").

Unable to distinguish their alleged harm from any other American's, Petitioners argue that they alone, and not the "whole community," investigated Georgia's election procedures, conducted analyses, and prepared a report summarizing their findings. Opp'n at 13–14. That is immaterial. Not only can Petitioners not "spend [their] way into standing simply by expending money to gather information and advocate against the defendant's action," *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024), but whether an injury is a generalized grievance turns on who was *injured* by the alleged action, not how many parties chose to pursue a claim in response to the alleged injury.

### *2. The individual Petitioners have not suffered any injury.*

Petitioners' arguments that the individual Petitioners have standing are unavailing and reveal the speculative nature of their alleged "injuries."[2] Mary Benefield alleges that her vote in the 2022 Midterm Election "*would have been effectively stolen from her*" had she not allegedly discovered an error. Opp'n at 12 (emphasis added). That argument makes clear that Benefield *did not* in fact suffer any injury in 2022 and certainly does not support any argument that she is likely to suffer any injury going forward. Her allegation that another individual *might* try to steal her identity to vote in her name in upcoming elections is entirely speculative. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (injury must be "certainly impending" to confer standing).

Other individual Petitioners' speculative fears of future harm suffer from the same problem. Lydia Davison and Frank Schneider do not allege any specific injuries beyond generic vote dilution. *See* Opp'n at 12. Charlice Byrd alleges that she is a candidate seeking reelection in the 2024 General Election and therefore that her candidacy might be affected. *See id.* But that does not relieve Byrd of the obligation to plead a specific harm to her candidacy. In fact,

---

[2] Petitioners' Opposition makes no argument that Kevin Moncla, who is neither a citizen of nor registered voter in Georgia, has suffered any injury.

this precise argument was recently rejected by a Pennsylvania district court: "Plaintiffs have not alleged any particular harm to their candidacies as a result of any executive actions taken by any defendant. A vague, generalized allegation that elections, generally, will be undermined, is not the type of case or controversy that this court may rule on under Article III." *Keefer v. Biden*, — F. Supp. 3d —, No. 1:24-CV-00147, 2024 WL 1285538, at *10 (M.D. Pa. Mar. 26, 2024), *cert. denied before judgment*, No. 23-1162, 2024 WL 4427541 (U.S. Oct. 7, 2024). The Amended Petition alleges no specific facts concerning how Byrd's candidacy would allegedly be affected. Moreover, Byrd is no longer a candidate, as the 2024 General Election has already taken place.

As for Deborah Davis, David Cross, and Mark Davis, their alleged injuries are acts of their own making. Deborah Davis's only alleged injury is that she filed a complaint regarding the processing of absentee ballots, and David Cross and Mark Davis claim they elected to conduct alleged "analyse[s]" of vote tallies and voter registrations. Opp'n at 12. Not only are these alleged injuries acts that Petitioners voluntarily took, but they are not fairly traceable to any of Respondents' violations of federal or state election law. *Jacobson*, 974 F.3d at 1253. None of these alleged injuries can meet the injury-in-fact or traceability requirements required of Article III standing.

### *3. United Sovereign Americans lacks organizational and associational standing.*

United Sovereign Americans fares no better than the individual petitioners.[3] United Sovereign Americans argues that it can take advantage of representational or associational standing, *see* Opp'n at 11–12, but it has failed to allege that any member has suffered an injury. To invoke representational or associational standing, "an organization must demonstrate that (a) *its members would otherwise have standing to sue* in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (emphasis added) (quotations omitted). But United Sovereign Americans does not even allege that it *has any members*, let alone that any member has suffered an injury sufficient to confer standing in the member's own right. In fact, United Sovereign Americans concedes that "the claim set forth in this matter is not for an individual of the organization." Opp'n at 13.

---

[3] Petitioners do not address or attempt to distinguish *Maryland Election Integrity, LLC v. Maryland State Board of Elections*, No. CV SAG-24-00672, 2024 WL 2053773 (D. Md. May 8, 2024), which dismissed for lack of standing similar claims brought by United Sovereign Americans. *See id.* *3–4.

8

Nor can United Sovereign Americans establish standing in its own right. "Article III standing screens out plaintiffs" who are merely "concerned bystanders" and "who might have only a general legal, moral, ideological, or policy objection to a particular government action," *All. for Hippocratic Med.*, 602 U.S. at 381–82 (citations omitted), or "who might roam the country in search of governmental wrongdoing," *id.* at 379 (quotations and citation omitted). Accordingly, organizational standing requires that United Sovereign Americans suffered a cognizable injury in its own right. *See City of S. Miami v. Governor*, 65 F.4th 631, 638–39 (11th Cir. 2023). Neither the Amended Petition nor Petitioner's opposition alleges any such injury. To the extent that Petitioners believe the "expert data analysis" conducted by United Sovereign Americans constitutes an injury, Am. Pet. ¶¶ 164–177, the Supreme Court has made clear that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 394. Petitioners argue that United Sovereign Americans' "interests at stake relate to the heart of USA as its mission is to ensure all Unites States [sic] elections are fair, accurate, and trustworthy; the very heart of Petitioners' claims." Opp'n at 13. Not only is that statement entirely too general, but it is not pled in the Amended Petition.

### *4. Petitioners cannot establish standing through speculative fears of future harm.*

Like the Amended Petition, Petitioners' opposition barely addresses the risk of future injury, arguing only that Petitioners are "entirely reasonable in *fearing* that the that the demonstrated and pled issues which occurred in the 2022 federal election in Georgia will reoccur . . . ." Opp'n at 13 (emphasis added); *see also* Am. Pet. ¶ 21. That allegation only underscores the speculative nature of Petitioners' future injuries. Moreover, Petitioners "agree that it is possible that in every federal contested election supervised and certified by the state of Georgia in 2022 the 'winner' received more votes than the 'loser.'" Am. Pet. ¶ 21. Petitioners therefore ask this Court to extrapolate from the alleged *possibility* than an investigation into the results of the 2020 General Election and the 2022 Midterm Election would reveal irregularities that Petitioners are facing a "certainly impending" risk of harm in future elections. *Jacobson*, 974 F.3d at 1245. Allegations of errors in past elections do not "create standing to obtain an injunction against the risk of future unlawful conduct." *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020); *see also City of S. Miami*, 65 F.4th at 637 ("[T]he Supreme Court [has] made clear that past occurrences of unlawful conduct do not establish standing to enjoin the threat of future unlawful conduct."). But even if it did, Petitioners concede that they do not know if there were irregularities in prior elections. Petitioners

10

may not establish standing based on the speculation that irregularities in prior elections will certainly lead to irregularities in future ones.

### B. Petitioners have no basis for federal jurisdiction under the All Writs Act.

Petitioners dedicate several pages of their Opposition to the idea that, notwithstanding settled law to the contrary, this Court has jurisdiction to issue a writ of mandamus directing the Secretary in his duties because he is a "quasi-federal" officer. Opp'n at 17–21. [4]

Federal courts unanimously agree that "a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Moye v. Clerk, DeKalb Cnty. Superior Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973); *see also* Mot. at 15–16 (collecting cases). The reason is simple: there is no way for federal courts to hear a stand-alone mandamus claim against a state officer in the performance of his duties, and no way for federal courts to

---

[4] Following the structure of motions to dismiss filed by other Attorneys General in the slew of nearly identical cases filed by United Sovereign Americans, *see, e.g.*, *United Sovereign Americans, Inc. v. Ohio*, Case No. 5:24-cv-01359-JRA (N.D. Ohio), Petitioners address the Court's ability to grant mandamus relief in the context of whether they have stated a claim upon which relief can be granted, *see* Opp'n at 17–21. But whether one addresses the issue as one of jurisdiction under Rule 12(b)(1) or failure to state a claim under Rule 12(b)(6), the result remains the same. This Court does not have jurisdiction or the authority to issue a writ of mandamus against Respondents.

11

exercise jurisdiction over one. As explained at length in Respondents' motion to dismiss, the All Writs Act creates neither federal jurisdiction nor a private right of action. *See* Mot. at 14–18. And the federal mandamus statute gives district courts only "original jurisdiction of any action in the nature of mandamus to compel an *officer or employee of the United States* or any agency thereof . . . ." 28 U.S.C. § 1361 (emphasis added).

Petitioners suggest that because Congress has enacted legislation regulating federal elections, the Secretary is somehow a "quasi-federal" officer subject to this Court's jurisdiction. *See* Opp'n at 17–21. But Petitioners cannot cite to a single case for support of that argument, and none of the cases that Petitioners do cite involve the All Writs Act. *See id.* All involve claims brought under other federal statutes, from which one can only conclude that federal courts can hear claims against state actors pursuant to a federal cause of action. *See id.* That basic principle was of course never in dispute. Petitioners cannot extend it to cover the All Writs Act, which expressly permits courts to act only "in aid of" jurisdiction they already possess. Petitioners invoke the National Voting Rights Act ("NVRA") and the Help America Vote Act ("HAVA") but do not actually bring a claim under either, notwithstanding that the NVRA

*does* provide for a private right of action.⁵ It should go without saying that unless Petitioners can bring a claim against Respondents under either statute, this Court does not have jurisdiction under either statute.

Finally, Petitioners cite *Grizzle v. Kemp*, 634 F.3d 1314 (11th Cir. 2011), for the proposition that this Court can hear a petition for mandamus relief against the Secretary because the Secretary "must ensure compliance with NVRA and HAVA." Opp'n at 20. *Grizzle* said no such thing. That case did not involve a request for mandamus relief or the All Writs Act. It involved a series of constitutional challenges to actions of the Georgia State Election Board, and the discussion to which Petitioners cite concerned the Secretary's immunity under the Eleventh Amendment. *See id.* at 1316–19. It in no way supports the argument that the Secretary acts as a "quasi federal agency." ⁶

## II. Petitioners' claims are barred by the Eleventh Amendment.

Petitioners argue without citation that "*mandamus* relief and injunctive relief are functionally equivalent in the *Young* context, as both are forms of equitable relief and each form of relief is prospective in nature." Opp'n at 16

---

⁵ The Eleventh Circuit does not recognize HAVA as creating a private right of action. *See Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019).

⁶ Petitioners' opposition refers to the Secretary as a "quasi-federal agency." Opp'n at 8, 17, 20. Respondents assume that this is a typographical error from one of Petitioners' other cases where the state election board is a respondent. *See, e.g.*, *United Sovereign Americans, Inc. v. N.C. State Bd. of Elections*, 5:24-cv-500-JRA (E.D.N.C.).

13

(emphasis in original).[7] That argument fails for two reasons. First, as explained, Petitioners cannot bring a claim for mandamus standing alone against a state officer in federal court. *See* Mot. at 14–18, 23–24; *see also supra* Sec. I.B. Because Petitioners have disclaimed that they are seeking any injunctive relief, there is no relief that Petitioners can seek that is not barred by the Eleventh Amendment. Second, it is well-established that the "All-Writs Act, which is itself limited by the jurisdiction of the federal courts, cannot be used to circumvent or supersede the constitutional limitations of the Eleventh Amendment." *In re Baldwin-United Corp.*, 770 F.2d 328, 340 (2d Cir. 1985) (collecting cases). Petitioners seek relief solely under the All Writs Act. Even if Petitioners could seek relief in the nature of mandamus against state officers in federal court, that claim would be barred by the Eleventh Amendment.

Petitioners do not address Respondents' argument that the nature of the relief they seek falls squarely into the limitations of the *Ex parte Young* doctrine. *Compare* Mot. at 20–23, *with* Opp'n at 15–17. The *Ex parte Young* exception to Eleventh Amendment immunity rests in the narrowly-construed "fiction" that "that when a federal court commands a state official to do nothing

---

[7] Petitioners' argument further begs the question as to why, if mandamus and injunctive relief are "functionally" or "contextually" equivalent in this case, Opp'n at 16–17, injunctive relief is "inapplicable or inappropriate in this issue." Am. Pet. ¶ 242.

more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). *Ex parte Young* is therefore "limited to that precise situation" and does not apply where the state is the real party in interest. *Id*. Petitioners acknowledge this purpose of the *Ex parte Young* exception to sovereign immunity. *See* Opp'n at 16.

But Petitioners are not attempting to stop the Secretary from enforcing an unconstitutional law or violating Petitioners' constitutional rights. Petitioners seek a sweeping mandamus order directed at the *State of Georgia* (1) halting certification of the 2024 General Election; (2) ordering an investigation into the results of the 2020 General Election and the 2022 Midterm Election; (3) ordering the State to correct alleged errors in voter registration or "elections data"; (4) ordering the State to submit voter registration requests to the Department of Homeland Security; and (5) ordering that Respondents "perform their duties as the law intended." Am. Pet. at 44–45 (prayer for relief). The Amended Petition clearly seeks to compel affirmative action on behalf of the *State* in what amounts to an investigation and overhaul of the State's voter registration and election certification procedures. It is the "*effect* of the relief sought" that matters when considering whether a suit is one that operates against the state. *Pennhurst State Sch. &*

15

*Hosp. v. Halderman*, 465 U.S. 89, 107 (1984) (emphasis in original). The effect of Petitioners' requested mandamus relief clearly falls outside the narrow scope of *Ex parte Young*.

### III. Petitioners have failed to state a claim for mandamus.

Petitioners make no serious effort to argue the merits of their claim for a writ of mandamus. Aside from the fact that this Court does not have jurisdiction to enter such an order and the fact that there is no private right of action under the All Writs Act, *see supra* Sec. I.B, Petitioners cannot articulate what claim a writ would be "in aid of." They mention the NVRA and HAVA but bring no claim under either.

Moreover, Petitioners allege that a writ from this Court is the "only existing enforcement mechanism through which Petitioners may seek to hold the Secretary accountable . . . ." Opp'n at 20. This ignores both the existence of a private right of action under the NVRA as well as the existence of Georgia's own state mandamus statute. *See* O.C.G.A. § 9-6-20 *et seq.*

Petitioners acknowledge that a writ of mandamus is only appropriate to compel an official to undertake a "ministerial" action but do not explain how their requested course of action is in any way "ministerial." Opp'n at 21. Petitioners say they "do not seek this Court to order [the Secretary] *how* to perform his job," *id.* at 15 (emphasis in original), but Petitioners' own request

for relief belies that claim. Petitioners demand that this Court initiate an investigation into Georgia's prior elections, that Respondents be obligated to report on that investigation to this Court, and that Georgia be required to report voter registration requests to the Department of Homeland Security. *See* Am. Pet. at 44–45. None of that relief is required under state or federal law, and none of it is appropriate for a writ of mandamus.

## CONCLUSION

Petitioners' request for mandamus relief suffers numerous jurisdictional flaws and fails to state a claim on which relief can be granted. For the forgoing reasons, Secretary Raffensperger and General Carr respectfully request that this Court dismiss the Amended Petition.

This 13th day of November, 2024.

        Respectfully submitted,

| | |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| BRYAN K. WEBB<br>Deputy Attorney General | 743580 |
| */s/ Elizabeth T. Young*<br>ELIZABETH T. YOUNG<br>Senior Assistant Attorney General | 707725 |

*Attorneys for Secretary of State Brad Raffensperger*

Please address all
communications to:
Elizabeth T. Young
Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
Telephone: (404) 458-3425
Email: eyoung@law.ga.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS OF SECERTARY OF STATE BRAD RAFFENSPERGER AND ATTORNEY GENERAL CHRIS CARR** with the Clerk of Court using the CM/ECF e-filing system, which will send notification of such filing to the parties of record via electronic notification.

Dated: November 13, 2024.

*/s/ Elizabeth T. Young*
Elizabeth T. Young
Senior Assistant Attorney General
