UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARY BENEFIELD, et al., ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No.: 2:24-cv-104 |
| ) | |
| BRAD RAFFENSPERGER, et al., ) | |
| ) | |
| Respondents. ) | |

**RESPONDENT GARLAND'S MOTION TO DISMISS**

This case alleging election irregularities was brought by a non-profit organization and eight individual Georgia residents ("Petitioners"). Petitioners allege that Georgia's 2022 federal election did not meet minimum reliability standards, as they define those standards, so the results should not have been certified. Using this premise as their baseline, Petitioners allege that the state and federal government must take measures "to ensure that the 2022 performance is not repeated in subsequent federal elections" so that Georgia voters do not suffer damages if the certified election results are likewise "repeated in 2024." Doc. 8 at 3. They ask this Court to step in and take extraordinary action—to issue a writ of mandamus that orders Merrick Garland, the Attorney General of the United States ("Attorney General Garland"), to halt Georgia's 2024 federal election, which has already occurred—so that Petitioners' allegations can be investigated and the 2024 election can proceed on Petitioners' terms.

1

Petitioners' claims against Attorney General Garland are flawed from all angles. First and foremost, this Court does not have jurisdiction to entertain Petitioners' claims. No Petitioner has Article III standing, as Petitioners assert only speculative injuries and generalized grievances that are neither traceable to Attorney General Garland nor redressable by this Court. Petitioners' mandamus claim is also jurisdictionally deficient, as they cannot establish that Attorney General Garland has a clear, nondiscretionary duty to act. Beyond these fatal jurisdictional issues, Petitioners' claims are not well-pled.

For these reasons, Attorney General Garland seeks dismissal for lack of jurisdiction and failure to state a claim upon which relief may be granted.

## BACKGROUND

This case is among a series of cases filed by Petitioner United Sovereign Americans, Inc., against state election officials and Attorney General Garland seeking writs of mandamus to prevent allegedly unreliable election results. Here, the other Petitioners are eight individuals—Mary Benefield, Charlice Byrd, Lydia Anne Green Davidson, Deborah J. Davis, David A. Cross, Mark Davis, Kevin M. Moncla, Frank H. Schneider—and a non-profit organization, United Sovereign Americans. Doc. 8, ¶¶ 61-69. Petitioners allege that Georgia's 2022 federal election had "hundreds of thousands of voter registration apparent errors" uncovered by United Sovereign Americans' "expert data analysis." *Id.*, ¶¶ 165, 167. These alleged errors concern voter registration information, such as addresses, names, registration status, and age, and votes counted. *Id.*, ¶ 172. Using these purported errors, United Sovereign Americans

computed error rates that Petitioners contend exceed the benchmark error rate applicable to "voting systems" under section 301 of the Help America Vote Act (HAVA) and the U.S. Election Assistance Commission's 2015 Voluntary Voting System Guidelines. *Id.*, ¶¶ 132-134. According to Petitioners, the error rates United Sovereign Americans calculated show that the 2022 election results are unreliable, and they further allege that Respondents have not acted to prevent these errors from recurring. *Id.*, ¶¶ 222, 245. Petitioners "believe and therefore aver" that these errors will continue uncorrected "without the requested judicial intervention." *Id.*, ¶ 219.

Petitioners ask the Court to issue a writ of mandamus that orders Attorney General Garland to "forc[e] the state of Georgia to comply with federal laws regarding voting – including voting accuracy and accountability." *Id.*, ¶ 246. The writ would order federal and state actors "to follow the laws cited herein in conducting the 2024 and subsequent federal elections, and adequately investigate and remedy the problems exposed in and [sic] 2022 elections and detailed above." *Id.*, ¶ 248.

Although Petitioners maintain that they are not challenging or seeking to undo the 2022 election results, they make various requests related to that election, asking the Court to: (1) formally recognize that Georgia's voter registration rolls had hundreds of thousands of apparent errors in the 2022 Election, (2) order Respondents to ministerially correct the apparent errors in the 2022 election, and (3) order Respondents to "ascertain to the Court's satisfaction the reasons why the 2022 errors occurred." *Id.* at 44. Petitioners also ask the Court to order the state to submit voter registration requests to the Department of Homeland Security to "verify citizen or

immigration status . . . whenever there exist any reliable indicators that an applicant or registered voter may not be a U.S. citizen." *Id.* at 45. Then, citing "permissible causes of action under [the National Voter Registration Act of 1993 ("NVRA")] and HAVA," Petitioners ask the Court to order that "the state of Georgia's [sic] may not certify the 2024 General Election unless and until the relevant Respondents have demonstrated to the Court that the 2024 General Election and subsequent elections were conducted in conformity with federal and state law and with fewer than the maximum errors permissible." *Id.* at 44. Finally, Petitioners ask the Court to order Respondents to perform "their duties as the law intended," including "investigating, and *where warranted in their discretion*, prosecuting persons or entities for failing to perform their duties in conformity with the law." *Id.* at 45 (emphasis added).

Attorney General Garland now moves to dismiss.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction over the action before it and can be either a facial or factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In facial attacks, the court accepts the complaint's allegations as true; in factual attacks, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* On a Rule 12(b)(1) motion, "the plaintiff has the burden of proving jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). When challenged, jurisdictional issues must be resolved first, as a court cannot proceed without jurisdiction. *See id.*

A Rule 12(b)(6) motion to dismiss challenges whether the plaintiff has sufficiently stated a claim "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In resolving a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint. However, . . . if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claims," the court "can then consider them in resolving the Rule 12(b)(6) motion." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

## ARGUMENT

### I.  Petitioners Lack Standing to Sue Attorney General Garland.

Petitioners fail to satisfy the most basic requirement for any suit to proceed in federal court—Article III standing. Article III of the Constitution confines federal judicial power to "cases" and "controversies," which "can exist only if a plaintiff has standing to sue." *United States v. Texas*, 599 U.S. 670, 675 (2023). This "bedrock constitutional requirement" must exist before a court may reach the merits of a claim. *Id.* By ensuring that a plaintiff has standing, "federal courts 'prevent the judicial process from being used to usurp the powers of the political branches.'" *Id.* at 676 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

5

The "irreducible constitutional minimum of standing" has three elements: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. Here, Petitioners fail to meet their burden for each element.

### A. *Petitioners fail to establish injury in fact.*

First, Petitioners' allegations do not amount to injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and quotations omitted). To be "concrete," the injury must be "real and not abstract," such that the plaintiff has "a personal stake in the outcome." *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016); *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. And where no actual injury is alleged, the injury must be "*certainly impending*" to meet imminence. *Clapper*, 568 U.S. at 410 (emphasis original). Injury in fact is not met where a plaintiff merely asserts a "generalized grievance" in which "the impact on [the] plaintiff is plainly undifferentiated and common to all members of the public." *Lujan*, 504 U.S. at 575.

Petitioners' alleged injuries do not meet any of these requirements. Petitioners allege they "have been and are currently harmed by the Georgia's voting systems currently and formerly in use in the state and federal elections" because the systems are "violations" of federal and state election laws, the Constitution, and federal civil

6

rights laws "pertaining to voter rights." Doc. 8, ¶ 90. Petitioners allege that Respondents "have allowed, and continue to allow," these alleged violations. *Id.* This injury is not theirs alone, rather it is shared by "all Georgia voters" and, they assert, "would cease to exist or be greatly relieved" by obtaining their requested relief. *Id.*, ¶ 92.

Individually, some Petitioners also allege injury related to the 2022 election, though they do not challenge or seek to undo the results of that election. Doc. 8, ¶¶ 80-88. Benefield alleges that she complained to state election officials about an attempt to steal her vote but did not receive a response that satisfied her. *Id.*, ¶ 80. Deborah Davis alleges that she complained to state election officials that absentee ballots were not being properly processed. *Id.*, ¶ 83. Cross alleges that he communicated to state election officials his view that the electronic voter certification system did not comply with "the law." *Id.*, ¶ 84. Moncla[1] alleges that he furnished state officials with proof of his concerns with an electronic election database. *Id.*, ¶ 86. Other than these allegations, no specific injuries are alleged.

United Sovereign Americans bases its standing on the individual Petitioners'. *Id.*, ¶ 94. The Petition does not attempt to invoke organizational or associational standing for the United Sovereign Americans. Petitioners' allegations do not meet organizational standing or associational standing in any event. *See Shelby Advocates*,

---

[1] Kevin Moncla is sometimes referred to in the Petition as Kevin Monica, *see, e.g.,* Doc. 8, ¶ 68 but this Motion uses the spelling provided in the caption and attachment, Doc. 8-1 at 14. He is not a resident or voter in Georgia. Doc. 8, ¶ 86.

947 F.3d at 982 (no associational standing where members do not have standing "in their own right," and no organizational standing based on past costs spent).

All told, Petitioners' allegations do not come close to constituting injury in fact. First, rather than being "concrete and particularized," Petitioners' injuries are textbook generalized grievances. *See Lujan*, 504 U.S. at 573-74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Petitioners do not allege that anything real or personal is at stake for them if the 2024 election proceeds without their interruption. *Clapper*, 568 U.S. at 411. Petitioners argue only that that they were and will be "harmed" by Georgia's "voting systems" because the systems "violate" laws. Doc. 8, ¶ 90.

But "an injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable." *See Lujan*, 504 U.S. at 575. And despite the thousands of registration issues purportedly "uncovered" by United Sovereign Americans, tellingly, no Petitioner alleges that these issues impacted their ability to register for the 2024 election. *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (noting Petitioners' allegations of past election issues failed to meet injury in fact because, *inter alia*, "they do not allege that [the issues] ever happened to any of them or in any election in which they

8

were candidates"). As it stands, Petitioners' injuries do not meet the "concrete and particularized" requirements of injury in fact.

Second, Petitioners cannot show their alleged harm is "actual or imminent," as opposed to "conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). As alleged, Petitioners "believe and therefore aver" that the 2024 election will violate various laws, *see e.g.,* Doc. 8, ¶ 176, but Petitioners do not base their beliefs on anything tangible, and "[a]llegations of possible future injury do not satisfy the requirements of Article III," *Whitmore*, 495 U.S. at 158. Petitioners' allegations rest on "speculative fear," *Clapper*, 568 U.S. at 410, that registration issues will occur and somehow lead to unreliable election results. This "highly attenuated chain of possibilities [] does not satisfy the requirement that threatened injury must be certainly impending," and because Petitioners do not offer anything more, their allegations do not meet imminence. *See id.*

### B. *Petitioners do not meet causation or redressability.*

Beyond failing to allege injury in fact, Petitioners cannot establish the remaining elements of standing: causation and redressability. For causation, the injury alleged "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court." *Lujan*, 504 U.S. at 560. For redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. "When a [plaintiff] challenges the defendant's actions with respect to third parties . . . , it is

'substantially more difficult' to establish standing given the causation and redressability problems that invariably arise." *Arizona v. Biden*, 40 F. 4th 375, 383 (6th Cir. 2022).

Here, Petitioners' alleged injuries from Attorney General Garland are that the Department of Justice has various enforcement, policing, and prosecution powers that have not been employed, or have not worked, to Petitioners' satisfaction. Doc. 8, ¶ 175. Petitioners believe that Respondents "have dismissed, and continue to dismiss," their concerns about the voter rolls in Georgia. *Id.* But Petitioners do not allege that their alleged injuries—fears that the 2024 election results will be unreliable—can be traced to Attorney General Garland in any specific way. No Department of Justice enforcement guidelines, policies, or directives are mentioned in the complaint, nor do Petitioners provide examples of supposed actions that the Attorney General has taken or mandatory duties that the Attorney General has failed to fulfill. Without such allegations—or anything like them—Petitioners' alleged injury is not "fairly traceable" to Attorney General Garland.

Petitioners also cannot establish that their injuries are redressable by this Court. The relief they seek against Attorney General Garland is a mandamus order that all Respondents "perform their duties as the law intended," to include "investigating, and where warranted in their discretion, prosecuting persons or entities." Doc. 8 at 45. As an initial matter, it is unclear how such an order "would remedy [Petitioners'] alleged injury," as Petitioners have not alleged that they have suffered any specific injury based on Attorney General Garland's supposed inaction.

10

*See Lujan*, 504 U.S. at 569. It is well-established that "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." *Texas*, 599 U.S. at 680. Indeed, Article II provides the Executive Branch discretionary authority to decide "how to prioritize and how aggressively to pursue legal actions," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices in this area." *Id.* at 679. Because Petitioners cannot establish that their requested relief remedies their alleged injuries, they lack redressability.

Petitioners cannot meet their burden of establishing standing to sue Attorney General Garland. This Court should dismiss their Petition for lack of jurisdiction.

## II. The Court Lacks Jurisdiction Over Petitioners' Mandamus Claim.

Petitioners' mandamus claim also fails for want of jurisdiction. The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction "is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Mandamus is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."

*Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011) (quotation omitted). "Mandamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Id.*; *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

Here, Petitioners fail to meet the high bar that has been set for mandamus relief. They do not establish any "duty owed" by Attorney General Garland within the meaning of § 1361. *See Mackzo*, 814 F.2d at 310. Such a duty "must be a mandatory or ministerial obligation" that "is plainly defined and peremptory." *Id*. "If the alleged duty is discretionary or directory, the duty is not owed." *Id.*

The Petition contains no such allegations. The "duty" they allege is that Attorney General Garland "enforce[s] and police[s]" the NVRA and HAVA in Georgia by "investigating, and where warranted in their discretion, prosecuting persons or entities for failing to perform their duties in conformity to the law." Doc. 8, ¶ 235; *id.* at 45. Petitioners' allegations, therefore, concede that they ask this Court to enforce a discretionary duty, for which there is no mandamus remedy. *See Mackzo*, 814 F.2d at 310. Indeed, as explained above, investigating and prosecuting are quintessential discretionary decisions. *See Texas*, 599 U.S. at 680. Accordingly, "[m]andamus will not lie to control the exercise of this discretion." *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970); *see also Jarrett v. Ashcroft*, 24 F. App'x 503, 504 (6th Cir. 2001) (affirming dismissal of mandamus action to compel U.S. Attorney General to investigate and prosecute plaintiff's allegations "because defendants owed [plaintiff] no mandatory duty"); *Leisure v. FBI of Columbus, Ohio*, 2 F. App'x 488, 489 (6th Cir. 2001) (affirming dismissal of mandamus action that sought a court order directing

the FBI to "address its duties and obligations to protect citizens"). Petitioners thus cannot establish that Attorney General Garland owes them a clear nondiscretionary duty, so their mandamus claim fails.

Nor can Petitioners establish a clear right to relief, specifically for their allegations that HAVA has been violated. Petitioners allege violations of HAVA based on the error rate computed by United Sovereign Americans' "expert analysis" that Petitioners claim exceeds HAVA's acceptable error rate. Doc. 8, ¶¶ 172, 177. Yet, as Petitioners acknowledge, HAVA's error rate pertains to "voting systems," which refers to the "hardware-related errors," not registration issues as the Amended Petition identifies. 2015 VVSG, A-20, at 79, https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf; *see also* 52 U.S.C. § 21081(a)(5) (discussing the "error rate of the voting system in counting ballots" while excluding errors "attributable to an act of the voter"). The factual errors that Petitioners allege are thus inapposite to the HAVA violations alleged, so Petitioners cannot establish a "clear right to relief" under HAVA. Petitioners' mandamus claim should be dismissed for this reason, too.

### III. Petitioners' All Writs Act Claim Must Be Dismissed.

Last, to the extent Petitioners bring their All Writs Act claim against Attorney General Garland, it must be dismissed. The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Act enables federal courts to

13

issue such commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel.*, 434 U.S. 159, 172 (1977). It does not authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.*

Petitioners' All Writs Act claim mirrors their mandamus claim against Attorney General Garland. They seek the same writ of mandamus under both statutes—one compelling Attorney General Garland to enforce and police the NVRA and HAVA. But the All Writs Act does not provide an independent source of jurisdiction, so Petitioners are not separately entitled to mandamus relief under it. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002) (noting "the All Writs Act does not confer jurisdiction under federal courts" so jurisdiction does not lie unless "specifically provide[d]" by Congress). As discussed above, Petitioners cannot establish their mandamus claim under 28 U.S.C. § 1361 because they do not allege a clear, nondiscretionary duty to act. Without jurisdiction under the Mandamus Act, their All Writs Act claim necessarily fails, too, as Petitioners do not assert any other claims in their Petition and, in fact, expressly disclaim other statutory authority for their claims. Doc. 8, ¶¶ 241, 242 (alleging Petitioners have no remedy other than mandamus so that Respondents will enforce HAVA and NVRA

but they are not bringing a "private cause of action" under those statutes). The Court should therefore dismiss Petitioners' All Writs Act claim against Attorney General Garland.

## CONCLUSION

For these reasons, the Court should grant Attorney General Garland's motion and dismiss all claims against Attorney General Garland.

Respectfully submitted, this 25th day of November, 2024,

JILL E. STEINBERG
UNITED STATES ATTORNEY

*/s/ O. Woelke Leithart*
Idaho Bar No. 9257
Assistant United States Attorney
U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 652-4422
E-mail: Woelke.Leithart@usdoj.gov