Bruce L. Castor, Jr.
*Attorney for Petitioners*

---

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA – BRUNSWICK DIVISION

---

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC. 167 Lamp and Lantern Village, Suite 194 Chesterfield, MO 63017 | CIVIL ACTION |
| *And* | Case No.: 2:24-cv-00104 |
| MARY BENEFIELD 2065 Lavista Circle Tucker GA 30084 | HON. LISA G. WOOD |
| *And* | MAG. BENJAMIN W. CHEESBRO |
| CHARLICE BYRD 1417 Olde Forge Lane, Woodstock, GA 30189 | **PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENT ATTORNEY GENERAL MERRICK GARLAND'S MOTION TO DISMISS** |
| *And* | |
| LYDIA ANNE GREEN DAVIDSON 3731 Starboard Court Ackworth, GA 30102 | |
| *And* | |
| DEBORAH J. DAVIS 200 Morris Hill Road Canton, GA 30114 | |
| *And* | |
| DAVID CROSS 4805 Spring Circle Suwanee, GA 30024 | |
| *And* | |

i

MARK DAVIS
325 Westfork Way
Suwanee, GA 30024

*And*

KEVIN M. MONCIA
911 Wilksenson Street,
Shreveport, LA 71104

*And*

FRANK SCHEIDER
5865 Camp Chase
Cumming, GA 30040

             *Petitioners,*

   v.

BRAD RAFFENSPERGER, IN HIS
OFFICAL CAPAITY AS THE SECRETARY
OF STATE OF GEORGIA
214 State Capitol
Atlanta, GA 30334

    *And*

CHRIS CARR, IN HIS OFFICIAL
CAPACITY AS THE ATTORNEY
GENERAL OF GEORGIA
47 Trinity Street, SW
Atlanta, GA 30334

    *And*

MERRICK GARLAND, IN HIS OFFICAL
CAPACITY AS ATTORNEY GENERAL OF
THE UNITED STATES
290 North Carolina Avenue NW
Washington DC 20530

             *Respondents.*

_____

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES......................................................................................... iv

I.   SUMMARY OF THE ARGUMENT ..................................................................... 1

II.  ARGUMENT ...................................................................................................... 2

   A.   The Amended Complaint contains allegations sufficient to invoke federal jurisdiction. ... 2

   B.   Petitioners have stated a need for valid *mandamus* relief under the All Writs Act because it is the only remedy available to adjudicate Petitioners' claims. ............................................... 9

III.  CONCLUSION .................................................................................................. 14

### TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anderson v. United States*,
    417 U.S. 211 (1974)……………………………………………………...……………10

*Baker v. Carr*,
    369 U.S. 186 (1962)………………………………………………………………………...4

*Cheney v. United States Dist. Ct.*,
    542 U.S. 367 (2004)…………………………………………………………………...12

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)…………………………………………………….………....2, 3

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
    438 U.S. 59 (1978)……………………………………………………………….....4

*Federal Election Comm'n v. Akins*,
    524 U.S. 11 (1998)……………………………………...……………...…..…..3, 4

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)………………………………………………………………….5

*Georgia Republican Party v. Sec. & Exch. Comm'n*,
    888 F.3d 1198 (11th Cir. 2018)……………………………………………...…..5

*Gill v. Whitford*,
    585 U.S. 48 (2018)…………………………………………………….……...3

*Gray v. Sanders*,
    372 U.S. 368 (1963)……………………………………………...………………3

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)……………………………………………….………..…………….5

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010)……………………………………………….………………12

*In re: Coy*,
    127 U.S. 731 (1888)…………………………………………….…………………….…10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)…………………………………………….…………….…………..1, 3

*Massachusetts v. Envtl. Prot. Agency*,
    549 U.S. 497 (2007)…………………………………….……………..…………..4

*Oregon v. Mitchell*,
    400 U.S. 112 (1970)………………………………………………………....10

*Reynolds v. Sims*,
    377 U.S. 533 (1964)………………………………………….……………..10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)………………………………………..…………....……3

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)…………………………………………………..…..…..5

*Wilbur v. United States*,
    281 U.S. 206 (1930)………………………………………………………...12

**Statutes**                           **Page(s)**

28 U.S.C. §§ 1331………………………………………………………….13

28 U.S.C. § 1651(a)……………………………………………...…………..12, 13

52 U.S.C. § 20501………………………………………………...…..……..2, 12

52 U.S.C. §§ 20501(b)(3)-(4)………………………………………………11

52 U.S.C. § 20507(a)(4)……………………………………………………11

52 U.S.C. § 21081(a)(1)(A)(ii)………………………………………...…….11

52 U.S.C. § 21081(a)(5)……………………………………………………11

52 U.S.C. § 21083(a)(1)(A)……………………………………...………….11

52 U.S.C. § 20901…………………………………………………………..2

52 U.S.C. § 21111…………………………………………………………...11

**Other Authorities**                     **Page(s)**

U.S. Const. art. I, § 4…………………………………………………9, 10, 13, 14

U.S. Const. art. I, § 8, cl. 18…………………………………...……………10

U.S. Const. art. III, § 2…………………………………………………………………………..2

## I.      SUMMARY OF THE ARGUMENT

Respondent, United States Attorney General Merrick Garland, (*hereinafter* "Respondent")
asserts that this Court should dismiss Petitioners' claim because the Court lacks subject-matter
jurisdiction. Respondent further claims Petitioners United Sovereign Americans, Inc. (hereinafter
"USA") and Mary Benefield, Charlice Byrd, Lydia Anne Green Davidson, David Cross, Mark
Davis, Kevin Moncia, and Frank H. Schneider (hereinafter "Petitioners") lack Article III standing.
Respondent's position is without merit. Petitioners established Article III standing in their
Amended Complaint since a complaint only needs to *allege* standing; standing need not be *proven*
at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing ultimately
requires injury, causation, and redressability, all of which are alleged in the Amended Complaint.
Qualified voters have constitutionally protected voting rights, and that an official's failure to
adhere to state and federal election laws amounts to a deprivation of that legally protected interest.
These principles fit squarely within the purview of Petitioners' allegations. Petitioners allege
inaction by Respondent which caused direct injury to their right to vote. As further explained
below, the Amended Complaint appropriately alleges a particularized injury and imminent risk of
future harm rather than a generalized grievance shared by the community. Accordingly, Petitioners
respectfully assert they in fact do possess standing to ask this Court find federal jurisdiction.

Respondent also contends that Petitioners do not establish extraordinary circumstances nor
show a clear duty to act under *mandamus*. Respondent trivializes the extraordinary circumstances
that exist in this case. The right to vote for one's representatives in government is a most critical
ingredient in the formation of a republic, and the United States Constitution in Article IV, Section
4 guarantees each state a "Republican Form of Government." The allegations provided in the
complaint show clear violations by state officials and clear inaction by the federal Respondent to

cure the State violations. This failure to act has led to widespread election irregularities all over the county and will continue to occur unless Respondent acts and enforces federal election law. Federal Respondent has a duty to enforce and prosecute federal elections laws, and if these election laws continue to be unenforced, individuals including Petitioners will be deprived of the right to fair elections.

Lastly, Respondent contends that Petitioners have failed to state a valid claim under the All Writs Act because this Honorable Court lacks jurisdiction. The All Writs Act is the only tool that Petitioners may seek to employ in order to stop Respondent's inaction against Georgia state officials continuing to violate Federal election law. The Help Americans Vote Act[1] (hereinafter "HAVA") and the National Voter Registration Act[2] (hereinafter "NVRA") both contain explicit language where Respondent may act if there are nonuniform and discriminatory acts establishing a clear duty. Election uniformity issues have arisen in Georgia on account of State Officials failing to follow federal laws and refusing to comply with congressionally mandated minimum allowed error rates. The All Writs Acts is the only way to hold Respondent accountable for his outright failure to act to enforce the will of Congress.

## II.   ARGUMENT

### A.   The Amended Complaint contains allegations sufficient to invoke federal jurisdiction.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal

---

[1] 52 U.S.C. §§ 20901 *et seq*.
[2] 52 U.S.C. §§ 20501 *et seq*.

jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan*, 504 U.S. at 560-561. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. *See Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S. at 409.

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders*, 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing. Generalized grievances in the context of standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote *did not* amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights…" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id*. In *Massachusetts v. Envtl. Prot. Agency*, the "" …EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Id*. at 498-499. Further, the Court reasoned that there is a substantial likelihood that the relief requested would prompt the EPA to reduce the risk. *Massachusetts v. E.P.A.*, 549 U.S. 497, 521 (2007); citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 79 (1978). Here, the harms implicating voting rights are arguably widespread (as, *arguendo*, are the effects of greenhouse gas emissions, as in *Massachusetts v. E.P.A. supra*). In addition, this Court's involvement is the only solution that would aid in Petitioners request to prompt Respondent to evaluate and correct the voter discrepancies. Thus, Petitioners complaining of election-related injuries from Respondent also have standing to seek review by federal courts under Article III, just as those seeking relief in the cases cited above.

The Supreme Court has stated that when a plaintiff is a group or organization representing several persons with similar injuries, such "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *see Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1204 (11th Cir. 2018).

The Amended Complaint here alleges standing sufficient to establish subject-matter jurisdiction under Article III. Plaintiff Mary Benefield is a registered voter in Georgia who discovered someone attempted to steal her vote by using false identification, she reported the incident immediately. If Petitioner did not discover this error, her right to vote would have been effectively stolen from her, raising questions of the legality of other votes cast in 2022 and future elections. Petitioner Charlice Byrd is a Georgia voter and State Representative seeking reelection in 2024 whose very job was decided by the election.  If the inaccuracies are not corrected, the risk will continue in any of his future efforts at seeking state office causing him direct harm.  Deborah Davis is a registered Georgia voter who filed a complaint because a third party (not a state official) processed absentee and mailed-in ballots instead of a sworn Georgia absentee clerk. The improper monitoring and counting of absentee and mailed-in ballot directly affects Petitioners and dilutes their votes. Davis Cross is a registered Georgia voter who provided proof and notice that the vote tally in Fulton and Gwinnett Counties was overstated and discovered the electronic voter certification system was not certified by the United States Election Assistance Commission. Despite notice, Respondent Secretary of State Raffensperger's took no corrective action. Petitioner Mark Davis, a registered voter in Georgia who has analyzed voter data for more than 30 years,

identified thousands of voter registration irregularities in Georgia's Voter Database. Petitioners Lydia Davidson and Frank Schneider are registered voters whose votes were effectively diluted due to the inaccurate votes cast in 2022 and the likelihood of harm in 2024 and future federal elections.  Even after reporting incidents of voter irregularities, the State Officials have done nothing to investigate nor has Respondent U.S. Attorney General, again with notice, taken any action to enforce federal election law after these irregularities. Each Petitioner could have brought an action on their own but are choosing to join their claims with USA.

Further the interests at stake relate to the heart of USA as its mission is to ensure all United States elections are fair, accurate, and trustworthy; the very heart of the claims set forth in the Amended Complaint. Finally, contrary to federal Respondent's assertion, Petitioners' claims set forth here are not for an individual of the organization, rather it is for the benefit of all legally registered voters, protecting their votes against the dilution that occurred in 2022, and prevent further voter inaccuracies in future federal elections regulated by the State of Georgia.[3]

Respondent's assertion that Petitioners lack standing by virtue of Petitioners' failure to assert a legally cognizable injury, and likelihood of *future* harm in *subsequent* federal elections administered by Respondent, ignores the factual allegations Petitioners have plainly stated in the Amended Complaint. Petitioners contend they are entirely reasonable in fearing that the demonstrated and pled issues which occurred in the 2022 federal election in Georgia will reoccur since Georgia election officials, as alleged in the Amended Complaint, have done nothing to correct those errors despite notice. Respondent U.S. Attorney General has done nothing to enforce

---

[3] Petitioners will seek data relative to the 2024 elections when it becomes available to compare to the irregularities known to have existed in the 2022 federal election to enhance their argument that if allowed to remain unchecked, Georgia election officials will continue to supervise federal elections in a grossly imprecise way absent intervention by this Honorable Court.

or ensure uniformity in how Georgia and the nation carry out federal elections. These irregularities are directly impacted by the Respondent's inaction.

Turning to the issue of whether Petitioners' injury constitutes simply a generalized grievance shared by the whole community, Petitioners suggest it was not the whole community that sent written inquiries to State Officials requesting transparency as to Georgia's compliance with federal election laws and explanations regarding documented voter and registration irregularities. In the same vein, the State Officials did not deny the whole community such requests. State Officials denied Petitioners' requests specifically. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls, Petitioners did that. The whole community did not create a comprehensive report on apparent registration and voting violations, Petitioners did. Petitioners informed the whole community of these issues, and the whole community could not have realized them on its own. Petitioners themselves, took these actions which distinguished Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple and specific allegations concerning, *inter alia*, discrepancies in voting records, which suggest that this is not merely a speculative issue, but a very real problem causing Petitioners and Petitioners' members legitimate concerns over whether Georgia is counting and considering their votes in such a way that Petitioners' votes are undiluted.

In sum, for purposes of a Motion to Dismiss, the Amended Complaint states a sufficiently plausible cause of action, at the early stages of litigation, to confer presumptive standing upon Petitioners. Petitioners set forth in the Amended Complaint a series of factual allegations establishing that named Petitioner is an individual qualified to vote in Georgia whose vote was diluted in 2022 through Respondent's failure to ensure that Georgia's voting systems and voter

registration records met certain federal standards prior to certification. If the errors identified are not corrected, the election's integrity will continue to be called into question. Petitioners have identified said anomalies and have pled they brought them to the attention of Georgia election officials who bear the responsibility delegated by the Georgia legislature to regulate federal elections. Respondent United States Attorney General  has failed to investigate and address these anomalies despite Respondent's duty and responsibility to do so. No other means exists to require a government official to perform his duties apart from a writ of *mandamus.*

Petitioners have brought this action in an effort to require, through court order, the Attorney General to investigate and take appropriate action concerning the apparent errors Petitioners have brought to Respondent's attention. Petitioners do not seek this Court to order Respondent *how* to perform his jobs. Petitioners seek court intervention to require Respondent simply to *do* his jobs and take whatever action Respondent considers appropriate in order to ensure Georgia complies with Congressional mandates. Petitioners contend the Court ought to order Respondent to investigate reports of anomalies as raised in the Amended Petition and report to the Court's satisfaction the reasons for such significant discrepancies, for example, how it is possible that in 2022, various Georgia county boards of elections could possibly have certified a federal election where more votes were counted than ballots cast?  Thereafter, in his discretion, federal Respondent ought to take whatever action he deems warranted to enforce the will of Congress while reporting his decisions and actions to this Court.

Petitioners suggest they have satisfied the injury-in-fact requirement under Article III, sufficiently to confer subject-matter jurisdiction upon this Court in order to seek the requested relief by alleging the particularized harm set out in the Amended Complaint and alluded to above establishing that one of more of Petitioners' injury-in-fact.

B. Petitioners have stated a need for valid *mandamus* relief under the All Writs Act because it is the only remedy available to adjudicate Petitioners' claims.

Petitioners have established federal jurisdiction for a claim in *mandamus.* Respondent's refusal to take action to enforce congressional intent has resulted and will continue to result in harm to Petitioners' right to vote. Under the Elections Clause, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have *presumptive* authority to regulate and administer the election for all federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers unambiguously intended Congress retain the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the *default* authority to regulate federal elections lies with the several states in the *absence* of acts of Congress. This makes the states subordinate to Congress when Congress from time to time, chooses to *act*.  When Congress chooses to do so, it becomes the duty of the Attorney General of the United States to carry out Congress' will. The Framers *intentionally* intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. The Constitution reserves to Congress the *ultimate* power to regulate federal elections, while simultaneously delegating the *presumptive* power to individual state legislatures. The Georgia General Assembly has further delegated the state's power to regulate federal elections to the Office of the Secretary of State. The Secretary of State, thus, acts as a quasi-federal officer when mandated to carry out the will of Congress. If Secretary of State fails or refuses to carry out Congress' intent,

it falls to federal Respondent to require such quasi-federal official to adhere to federal law. Only Respondent is empowered to enforce and execute the will of Congress.

Respondent has received notice of numerous election irregularities and has made a decisive choice not to enforce federal law.  Petitioners have nowhere else to turn but to this Honorable Court for relief in the absence of Respondent Attorney General's refusal to enforce federal law.  Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888) "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970).

Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to supersede Georgia's otherwise absolute authority to regulate federal elections, by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. Respondent is the only existing enforcement authority available to hold the State Officials accountable to federal law. Without this Honorable Court ordering federal Respondent to impose on Georgia election officials the accountability to the will of Congress,  States are free to actively ignore federal law and regulations in any federal election.

Under HAVA, two (2) provisions impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. HAVA states "[the] Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief ... as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title." 52 U.S.C. § 21111.  Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls

and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in Georgia's election laws. NVRA states "The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter." 52 U.S.C. §§ 20501(a). A writ of *mandamus* is the enforcement mechanism through which federal Respondent can be required to enforce Congressional intent under HAVA and NVRA.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

Here, Respondent argues that *mandamus* is not "necessary or appropriate" to the resolution of Petitioners' claims and is not agreeable to the usages and principles of law because the requested

relief exceeds the permissible scope of a writ of *mandamus*.[4]  Respondent cannot dispute that Congress delegated the power to regulate and enforce the administration of elections under HAVA and NVRA to the Attorney General. Respondent cannot dispute Congress' ultimate authority to regulate federal elections under the Elections Clause. U.S. Const. art. I, § 4. Respondent cannot dispute that Congressional mandates under HAVA and NVRA are plainly within the scope of his duties as Attorney General. It follows, then, that Respondent cannot dispute that he is required to enforce HAVA and NVRA in Georgia's federal elections.  Petitioners come to this Court to order federal Respondent to demand and ensure Georgia conducts such elections in accordance with federal law.

The very purpose of the All Writs Act is to provide a remedy by which federal courts may rectify in equity issues arising due to extraordinary circumstances such as those at issue here. But Respondent argues, despite Congress' undisputed superseding power to regulate federal elections, he is *not* required to comply with Congressional election legislation and therefore Petitioners cannot be afforded *mandamus* relief under the All Writs Act against Georgia election officials.  He alleges he is not required to do so on the basis that Georgia officials are *state* and not *federal* officials. Respondent claims he has no authority over state officials by misplaced application of federalism and dual sovereignty principles despite the Constitution itself carving out an exception to these principles when it comes to the supervising of the election of federal officers.  Article I sec. 4 places Congress squarely "on top" when it comes to the conduct of federal elections whenever Congress chooses to act as it has by enacting HAVA and NVRA. Yes, states presumptively supervise federal elections, but they do so by imperfect constitutional delegation inferior to the power of Congress.  Respondent would have this Court find no Constitutional

---

[4] Petitioners have established standing in this matter, as outlined above and under 28 U.S.C. §§ 1331 and 1367(a), and therefore the requested writ of *mandamus* is "in aid of" a matter over which this Court has jurisdiction.

mechanism exists by which the Attorney General may hold *state* election officers accountable for violating *federal* law. Accepting Respondent's contention as true would lead to an absurd result, as Respondent state officials would be effectively empowered to regulate and administer federal elections *without any Congressional oversight or fear of enforcement whatsoever* in direct contradiction of the plain language of, *inter alia*, Article I, sec. 4 of the Constitution. The language of the Elections Clause clearly precludes this outcome, as the Constitution states that Congress retains the *ultimate* authority to regulate federal elections. The All Writs Act exists as an enforcement mechanism by which Congress' will may be executed through Respondent, who may enjoin state election officials from violating federal election legislation, including HAVA and NVRA.

Here, *mandamus* relief is not merely "necessary or appropriate" to this Court's resolution of Petitioners' claims, it is the *only* remedy available to Petitioners to compel Respondent state officials' subservience to Congress' ultimate authority to regulate the federal election processes. Petitioners are asking this Court to aid in addressing systemic issues raised in the Amended Complaint by requiring Respondent to demand state officials follow federal election legislation. Only federal courts are empowered to resolve the whole of Petitioners' claims, and the only available remedy for purposes of adjudicating Petitioners' claims is the requested writ of *mandamus*.

## III.    CONCLUSION

Based on the foregoing, Petitioners respectfully request this Honorable Court deny Attorney General Respondent's Motion to Dismiss in the above-captioned matter.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr*

Date <u>December 9, 2024</u>

By:     Bruce L. Castor, Jr.
        PA I.D. No. 46370
        *Pro hac vice*
        van der Veen, Hartshorn, Levin &
        Lindheim
        1219 Spruce Street
        Philadelphia, PA 19107
        Direst: (215) 422-4194
        Fax: (215) 546-8529
        Email: bcastor@mtvlaw.com
        *Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, a copy of the foregoing Petitioners' Response in Opposition to Respondent's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing though the Court's system.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: December 9, 2024

Bruce L. Castor, Jr.
Counsel for Petitioners