# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

UNITED SOVEREIGN AMERICANS,
INC., MARY BENEFIELD,
CHARLICE BYRD, LYDIA A.G.
DAVIDSON, DEBORAH J. DAVIS,
DAVID A. CROSS, MARK DAVIS,
KEVIN M. MONCLA, and FRANK
H. SCHNEIDER,

    Petitioners,

    v.

BRAD RAFFENSPERGER, in his
official capacity as the
Secretary of State of
Georgia, CHRIS CARR, in his
official capacity as the
Attorney General of
Georgia, and MERRICK
GARLAND, in his official
capacity as Attorney
General of the United
States,[1]

    Respondents.

2:24-CV-104

## ORDER

Before the Court are Respondents' motions to dismiss the amended petition for relief in the form of a writ of mandamus. Dkt Nos. 14, 19. The motions have been thoroughly briefed and are ripe

---

[1] The Clerk is **DIRECTED** to substitute Pamela Bondi for Merrick Garland as the proper defendant for the Attorney General of the United States.

for review. Dkt. Nos. 14, 16, 17, 19, 21. For the reasons stated below, Respondents' motions are **GRANTED.**

BACKGROUND[2]

This case is about elections in the State of Georgia. Dkt. No. 8. United Sovereign Americans, Inc., Mary Benefield, Charlice Byrd, Lydia A.G. Davidson, Deborah J. Davis, David A. Cross, Mark Davis, Kevin M. Moncla, and Frank H. Schneider ("Petitioners") ask the Court to issue a writ of mandamus to address discrepancies in Georgia voter registrations. Id. ¶¶ 61-88. Petitioners allege that they "uncovered overwhelming evidence of registration issues" in the 2022 Georgia midterm election, such as invalid ages, improper duplicate registrants, incorrect dates, and incomplete addresses. Id. ¶ 89.

Petitioners ask the Court to direct the writ to Brad Raffensperger, in his official capacity as the Secretary of the State of Georgia, Chris Carr, in his official capacity as the Attorney General of Georgia, and the Attorney General of the United States, now Pamela Bondi, in her official capacity ("Respondents"). Id. at 3. However, in their response to Respondents' motions to dismiss, Petitioners concede that "[t]o

_____

[2] On a motion to dismiss under a Rule 12(b)(1) facial attack for lack of subject matter jurisdiction, "the allegations in [the] complaint are taken as true for the purposes of the motion." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007).

the extent the Georgia Attorney General and United States Attorney General do[] not have a role in the time, place, and manner of federal elections, nor in their conduct, within Georgia, Plaintiffs concur that the claim against both Attorneys General should be dismissed." Dkt. No. 16 at 7 n.1.

## I.    Petitioners & Alleged Injuries

Petitioners include (1) two political candidates; (2) Georgia voters who specifically reported the alleged election errors to state officials; (3) voters with no involvement in uncovering the election errors; (4) a non-Georgia voter; and (5) a non-profit organization of which Petitioners are members. Dkt. Nos. 8 ¶¶ 79–94, 16 at 14, 21 at 10–12.

### A.    United Sovereign Americans, Inc.

"United Sovereign Americans, Inc. is a non-profit corporation in the state of Missouri existing to advance election integrity in United States Federal elections administered by the several states." Id. ¶ 79. Petitioners allege that it is further a non-partisan "organization organized in the state of Georgia [which] uncovered overwhelming evidence of registration issues in the 2022 elections." Id. ¶ 89.

### B.    Petitioner Mary Benefield

Mary Benefield ran for Georgia State Senator for District 55 in the 2024 General Election. Id. ¶ 62. Petitioner Benefield is also a registered voter in Georgia and has been since 1992. Id.

¶ 80. In 2020, Petitioners allege that an unknown individual "attempt[ed] to steal Petitioner [Benefield]'s vote by using false identification to effectuate an online voter registration address change and requesting an absentee ballot in her name." Id. She reported this to election officials; "[h]owever, Georgia's officials refused to show her the false identification provided by the person who attempted to steal her vote." Id.

### C.  Petitioner Charlice Byrd

Charlice Byrd is the incumbent Georgia State Representative for District 20 and ran for re-election in the 2024 General Election. Id. ¶ 63. The petition does not state anything further about Petitioner Byrd or her specific injury. See generally id.

### D.  Petitioner Lydia A. G. Davidson

Lydia A. G. Davidson is a Georgia voter. Id. ¶ 64. The petition does not state anything further about Petitioner Davidson or her injury. See generally id.

### E.  Petitioner Deborah J. Davis

Deborah J. Davis is also a Georgia voter. Id. ¶ 65. Petitioners allege that Petitioner Davis "complained to Georgia's elections official[s] about their violation of Georgia law that requires absentee ballots be processed and mailed by only a sworn Georgia absentee clerk and not unsworn third-party venders such as Dominion." Id. ¶ 83. Petitioners allege that this official "refused to comport with Georgia law." Id.

4

### F.   Petitioner David A. Cross

"David A. Cross is a Georgia voter who has attempted without success to bring the matters complained of in [the] Petition to the attention of Georgia state election officials." Id. ¶ 66. Specifically, Petitioner Cross "complained, and provided proof, to Georgia's elections officials that have overstated the vote tally, in Fulton and Gwinnett counties, in the 2020 election." Id. ¶ 84. "He has further complained and provided proof to Georgia's elections officials that its electronic voter certification system [is] not in compliance with the law because its Dominion scanners were not certified by the United States Election Assistance Commission ('EAC') prior to purchase." Id.

### G.   Petitioner Mark Davis

The petition identifies Mark Davis as a Georgia voter and an expert witness in voter disputes. Id. ¶¶ 66, 85. Petitioner Davis has been "analyzing Georgia voter data for more than 30 years" and "has observed irregularities, such as issues regarding residency and redistricting, among other concerns relating to absentee balloting." Id. ¶ 85 (internal quotation marks omitted).

### H.   Petitioner Frank H. Schneider

Likewise, Frank Schneider is a Georgia voter who has attempted to raise concerns to Georgia state election officials. Id. ¶¶ 69, 87. The petition does not state anything further about Petitioner Schneider or his injury. See generally id.

### I.    Petitioner Kevin Moncla

Finally, Kevin Moncla is not a Georgia voter; instead, he is a resident of Louisiana who has attempted to raise concerns to Georgia state election officials. Id. ¶ 68. Petitioner Moncla "complained, and provided proof, to Georgia's elections officials of improper certification of the 2022 Fulton County election and among other things, provided [and] furnished Georgia's officials with proof that Dominion voting machines disclosed encryption keys that all[ow] unauthorized persons to gain access to election database[s]." Id. ¶ 86.

### II.   Relief Requested

Petitioners invoke the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA") along with the Georgia Election Code, O.C.G.A. § 21-2-50.2, and allege that Georgia does not comply with these statutes in its administration of elections.[3] Id. ¶ 204. "The scope of Petitioners' mandamus

---

[3] Petitioners assert that "[a] private cause of action may exist for HAVA through 42 U.S.C. § 1983," and "NVRA authorizes a private cause of action in the form of declaratory or injunctive relief." Id. ¶¶ 119, 136. Rather than bring a complaint, Petitioners request a writ of mandamus through the All Writs Act because Petitioners assert they "have no other remedy than a writ of mandamus." Id. ¶ 213. "Petitioners argue that injunctive and/or declaratory relief is inapplicable or inappropriate in this issue because the harm from the 2024 election is not yet realized and Petitioners are seeking to have Georgia election officials and/or federal officials bring the state of Georgia into compliance with federal and state law, specifically HAVA, NVRA, and the Georgia Election Code, O.G.C.[A.] § 21-2-50.2, absent a specific existing private

request is narrow." Id. ¶ 221. As they summarize it, "Petitioners seek this Court to order Respondents follow existing federal and state law designed by Congress and the Georgia General Assembly to ensure that Georgia's 2024 and subsequent combined federal and state general elections produce reliable results within the margin of error rate allowed." Id. Petitioners request the Court to order Respondents to "take steps, both short term and long term, to ensure the apparent errors made during the 2022 elections do not recur and to bring Georgia into compliance with HAVA's specific mandate of no greater than 1 voting error out of 125,000 votes." Id. ¶ 205.

Petitioners' requested relief falls into a few categories: (1) ordering Respondents to follow and enforce federal and state election law, see id. ¶¶ 58, 202, 204–05; (2) ordering Respondents to investigate the irregularities, report the results to the Court, and retroactively correct errors in election data to comply with the federal and state election law, see id. ¶¶ 58, 223, 248; see also id. at 44; (3) ordering the state of Georgia to not certify the results of the 2024 election,[4] see id. at 44; (4) ordering the

_____

cause of action Petitioners could assert that affords Petitioners relief." Id. ¶ 214.

[4] Although the 2024 election occurred during the briefing on these motions to dismiss, Petitioners assert that they "will seek data relative to the 2024 elections when it becomes available to compare to the irregularities known to have existed in the 2022 federal election to enhance their argument that if allowed to remain unchecked, Georgia election officials will continue to supervise

state of Georgia to submit voter registrations to the Department of Homeland Security to verify citizenship or immigration status, see id. at 44–45; and (5) "formally recognize" the hundreds of thousands of errors in the 2022 Georgia election data, see id. at 44. In summary, Petitioners ask the Court to order Respondents to "perform their duties as the law intended" by (1) "conducting federal elections in conformity with the law [the NVRA, the HAVA, and the Georgia Election Code]" or (2) "investigating, and where warranted in their discretion, prosecuting persons or entities for failing to perform their duties in conformity to the law after being given timely notice to do so." Id. at 45. Petitioners request that Respondents bring Georgia into compliance with the law in time for the 2024 General Election or, in the alternative, Petitioners seek to compel Respondents to bring Georgia into compliance in "all federal elections conducted by the state of Georgia going forward while providing relief to 2024 voters if bringing the state of Georgia into compliance in time is impossible upon showing by Respondents." Id. ¶ 204.

## LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a claim when the court lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A "federal court is

---

federal elections in a grossly imprecise way absent intervention by this Honorable Court." Dkt. No. 21 at 12 n.3.

powerless to act beyond its statutory grant of subject matter jurisdiction." <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1299 (11th Cir. 2001). Accordingly, a court must "zealously" ensure that jurisdiction exists over each case which comes before it. <u>Id.</u>

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be asserted on facial or factual grounds. <u>Carmichael v. Kellogg, Brown & Root Servs., Inc.</u>, 572 F.3d 1271, 1279 (11th Cir. 2009). Facial challenges are "based solely on the allegations in the complaint," while factual challenges may refer to extrinsic evidence. <u>Id.</u>[5]

In a facial challenge to subject matter jurisdiction, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." <u>McElmurray</u>, 501 F.3d at 1251 (quoting <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. 1981)). Thus, a "'facial attack' on the complaint 'requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" <u>Id.</u> (quoting <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990) (alterations adopted)); <u>see also</u> <u>Carmichael</u>, 572 F.3d at 1279.

---

[5] In this case, Respondents facially challenge subject matter jurisdiction. Dkt. Nos. 14, 19.

## DISCUSSION

Respondents move to dismiss the amended petition because Petitioners lack standing to sue. Dkt. Nos. 14, 19. Respondents also move to dismiss based on Petitioners' failure to meet the requirements for a mandamus remedy. Dkt. Nos. 14, 19. The State Respondents separately argue that Eleventh Amendment immunity bars the requested relief. Dkt. No. 14. The Court holds that Petitioners lack standing, and thus there is no justiciable case before the Court.[6]

Article III of the United States Constitution cabins the jurisdiction of the federal courts to the resolution of cases and controversies. U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). The standing requirement guarantees "that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" FDA v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quoting Valley Forge Christian

---

[6] Because Petitioners lack standing, the Court does not reach Defendants' arguments regarding the availability of a mandamus remedy or the Eleventh Amendment jurisdictional bar.

Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 487 (1982)).

"To establish standing," Petitioners "must demonstrate (i) that [they have] suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by [Respondents,] and (iii) that the injury likely would be redressed by the requested judicial relief." Id. at 380 (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). These three "requirements constitute 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" Id. (quoting Lujan, 504 U.S. at 560). As such, failure to show any one requirement results in a failure to show standing. Koziara v. City of Casselberry, 392 F.3d 1302, 1304 (11th Cir. 2004). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." Town of Chester v. Laroe Estates, Inc., 581 U.S. 433, 439 (2017); see also Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1124 (11th Cir. 2019) ("[S]tanding must exist 'for each claim and for each form of relief that is sought.'" (quoting Chester, 581 U.S. at 439) (alterations adopted)).

To meet the first requirement, Petitioners must suffer an injury-in-fact, that is, "an invasion of a legally protected interest that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical.'" Lewis v.

Governor of Ala., 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (quoting Lujan, 504 U.S. at 560). As Petitioners characterize their asserted Article III injury, "[t]he scope of Petitioners' mandamus request is narrow: Petitioners seek this Court to order Respondents follow existing federal and state law designed by Congress and the Georgia General Assembly to ensure that Georgia's 2024 and subsequent combined federal and state general elections produce reliable results within the margin of error rate allowed." Dkt. No. 8 ¶ 221.

### I. Georgia Voters

"A citizen may not sue based only on an 'asserted right to have the Government act in accordance with law.'" All. For Hippocratic Med., 602 U.S. at 381 (quoting Allen v. Wright, 468 U.S. 737, 754 (1984)). This is because such claims "amount to little more than attempts to employ a federal court as a forum in which to air generalized grievances about the conduct of government." Valley Forge, 454 U.S. at 483 (internal quotation marks and citation omitted) (alterations adopted). Accordingly, the U.S. Supreme Court has long rejected standing claims predicated on the right to have the Government act lawfully because such claims fail to assert a particularized and concrete injury. See, e.g., id. (citing Fairchild v. Hughes, 258 U.S. 126, 129 (1922); Baker v. Carr, 369 U.S. 186, 208 (1962); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216-22 (1974); Laird v. Tatum,

408 U.S. 1 (1972); Ex parte Levitt, 302 U.S. 633 (1937)); see also United States v. Hays, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." (citations omitted)).

For the Petitioners asserting an injury based only on their status as Georgia voters, this case is decided by Wood v. Raffensperger, 981 F.3d 1307, 1314 (11th Cir. 2020).[7] In Wood, the plaintiff premised "his standing on his interest in ensuring that only lawful ballots are counted." Id. (alterations adopted). The Eleventh Circuit held that this interest was nothing more than an "injury to the right 'to require that the government be administered according to the law'" which is a generalized grievance, not a particularized injury. Id. (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1205-06 (11th Cir. 1989)). "And the Supreme Court has made clear that a generalized grievance, 'no matter how sincere,' cannot support standing." Id. (quoting Hollingsworth v. Perry, 570 U.S. 693, 706 (2013)).[8]

---

[7] Petitioners make no attempt to distinguish Wood. See Dkt. Nos. 16, 21.

[8] Petitioners rely on Massachusetts v. EPA, 549 U.S. 497 (2007), to argue that "widespread harm" can nevertheless pose an actual, particularized injury. Dkt. No. 16 at 11, 21 at 10. Two critical considerations of the Massachusetts v. EPA decision are not present here. See generally id. First, the parties invoking federal jurisdiction are not sovereign States. See Massachusetts v. EPA, 549 U.S. at 518 ("It is of considerable relevance that the party seeking review here is a sovereign State and not, as it was in

Petitioners respond that their injury differs from other Georgia voters because they documented and reported the "voter and registration irregularities." Dkt. No. 16 at 13. Further, Petitioners "comb[ed] through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls" to "create a comprehensive report on apparent registration and voting violations." Id. Petitioners have cited no authority, nor is the Court aware of any, that transforms any asserted right to have the government follow the law into a cognizable basis for standing when the plaintiff or petitioner is the one that uncovered or reported the government misconduct. Cf. All. For Hippocratic Med., 604 U.S. at 394 (A plaintiff, who has not otherwise suffered a concrete injury, "cannot manufacture its own standing" by simply expending resources to "gather information and advocate against the defendant's action."). Indeed, any citizen could have made the public records requests here. The purported injury is still an "injury to the right to require that the government be administered according to the law." Wood, 981 F.3d at 1314 (internal quotation marks and citation omitted). This injury affects the Petitioners

---

Lujan, a private individual . . . . States are not normal litigants for the purposes of invoking federal jurisdiction."). Second, this is not a procedural rights case. See id. ("[A] litigant to whom Congress has accorded a procedural right to protect his concrete interests . . . can assert that right without meeting all the normal standards for redressability and immediacy." (internal quotation marks and citation omitted)).

as voters indistinguishably from the way it affects all Georgia voters.[9]

## II. Political Candidates

Notwithstanding, the Eleventh Circuit in <u>Wood</u> twice recognized that the injury-in-fact calculus might be different if the plaintiff is a political candidate. See <u>id.</u> ("For example, if Wood were a political candidate harmed by the recount, he would satisfy this requirement because he could assert a personal, distinct injury." (citing <u>Roe v. Ala. ex rel. Evans</u>, 43 F.3d 574, 579 (11th Cir. 1995)); <u>id.</u> at 1316 ("For example, perhaps a candidate or political party would have standing to challenge the [election] irregularities.").

Petitioner Benefield ran for Georgia State Senator for District 55 in the 2024 General Election. Dkt. No. 8 ¶ 62. Petitioner Byrd is the incumbent Georgia State Representative for District 20 and ran for re-election in the 2024 General Election.

---

[9] Petitioners' reliance on <u>FEC v. Akins</u>, 524 U.S. 11 (1998), is likewise unavailing. Dkt. Nos. 16 at 10, 21 at 10. The <u>Akins</u> decision rested on the text of the Federal Election Campaign Act of 1971, which specifically provides for an aggrieved party to seek review of a complaint dismissed by the Federal Election Commission. 524 U.S. at 19. Petitioners reject the similar language in the NVRA as the underlying basis for their claim—and importantly, do not rely on such language to confer standing in their briefs—because the remedy is "toothless." Dkt. Nos. 8 ¶¶ 119, 214, 16, 21. Therefore, <u>Akins</u> does not redeem Petitioners' failure to plead the standing requirements.

Id. ¶ 63. Thus, the Court analyzes separately whether Petitioners Benefield and Byrd allege a particularized injury.

These two candidates' status alone is non-dispositive if the form of relief sought is not specific to their candidacies. See, e.g., Keefer v. Biden, 725 F. Supp. 3d 491, 504 (M.D. Pa. 2024) (holding that "[a] vague, generalized allegation [asserted by state politicians] that elections, generally, will be undermined, is not the type of case or controversy that this court may rule on under Article III" (citations omitted)). Petitioners Benefield and Byrd have not alleged any particularized harm to their candidacies. Indeed, these Petitioners' asserted injury is identical to that of other Georgia voters: an interest in ensuring that Georgia elections are properly administered. See generally Dkt. Nos. 8, 16, 21. This injury is "undifferentiated and common to all members of the public." Lujan, 504 U.S. at 575 (internal quotation marks omitted). Petitioners do not "explain how [their] interest in compliance with state election laws is different from that of any other person." Wood, 981 F.3d at 1314. Likewise, the candidate Petitioners do not demand a recount or otherwise contend the outcome of their respective candidacies would be different if the Court issued the writ of mandamus. Thus, the mere fact that some Petitioners were political candidates does not change the unwavering standing requirement to assert an injury-in-fact, not a generalized grievance.

The Court notes that Petitioner Benefield also alleges that a person attempted to steal her vote, and state election officials refused to reveal the "false identification" of this person. Dkt. No. 8 ¶ 80. This does not change the standing determination for two reasons. First, the requested relief of compelling Respondents to "prosecute anyone in violation of federal and/or state law" coincides with this injury. Id. ¶ 58. Petitioners themselves characterize this prosecution as "compliance with existing election law." Id. Thus, this injury is no different from the asserted injury to have the government comply with the law.

Second, and even assuming this is a concrete or particularized injury, this injury would not be redressed by the requested judicial relief because Petitioners do not seek that the writ remedy this issue by requiring Respondents to disclose the false identification to Petitioners in conjunction with a prosecution. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.") Instead, "Petitioners seek that the requested writ direct Respondents to investigate and remedy the issues exposed in the 2022 elections to avoid repeating the same mistakes." Dkt. No. 8 ¶ 80. Therefore, Petitioner Benefield's second alleged injury does not create cognizable standing to sue.

In conclusion, the Court holds that the individual Petitioners fail to satisfy their burden to allege an injury-in-fact sufficient to confer standing. Rather, the individual Petitioners wage generalized grievances against the State of Georgia for allegedly failing to hold elections in conformity with the law.

### III. United Sovereign Americans

Finally, "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000). Because the Court holds that none of the individual Petitioners would have standing to sue in their own right, United Sovereign Americans cannot satisfy the Article III injury-in-fact requirement either. See id.

At its core, Petitioners' theory is that the state of Georgia caused their asserted injury by "diminish[ing] the effectiveness of their vote," and this injury is not "a generalized grievance." Dkt. Nos. 16 at 10, 21 at 9 (citing Baker, 369 U.S. at 208). However, as the Eleventh Circuit in Wood stated with crystalline clarity, this vote dilution theory only provides a basis for

standing when there is "a point of comparison." 981 F.3d at 1314 (citing racial gerrymandering and malapportionment cases as examples). "A person's right to vote is individual and personal in nature," but only supports standing when that person alleges facts showing a unique or differentiated "disadvantage to *themselves as individuals*." Gill v. Whitford, 585 U.S. 48, 66 (2018) (emphasis added) (citations omitted).

Accordingly, courts around the country have rejected this theory of standing where, like here, the alleged harm is simply an "asserted right to have the Government act in accordance with law" to properly hold elections. See, e.g., Md. Election Integrity, LLC v. Md. State Bd. of Elections, No. SAG-24-00672, 2024 WL 2053773, at *4 (D. Md. May 8, 2024), aff'd, 127 F.4th 534, 540 (4th Cir. 2025); O'Rourke v. Dominion Voting Sys. Inc., No. 20-CV-03747, 2021 WL 1662742, at *6–8 (D. Colo. Apr. 28, 2021) (collecting cases holding that generalized allegations of election fraud do not confer standing), aff'd, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022), cert. denied sub nom., No. 22-305, 143 S. Ct. 489 (Dec. 5, 2022); Keefer, 725 F. Supp. 3d at 504, aff'd, No. 24-1716, 2025 WL 688924 (3d Cir. Mar. 4, 2025); Martel v. Condos, 487 F. Supp. 3d 247, 253 (D. Vt. 2020) ("A vote cast by fraud or mailed in by the wrong person through mistake has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged."); Moore

v. Circosta, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) (collecting cases "which have addressed standing in vote dilution cases arising out of the possibility of unlawful or invalid ballots being counted, as Plaintiffs have argued here, [and] have said that this harm is unduly speculative and impermissibly generalized because all voters in a state are affected, rather than a small group of voters"); Iowa Voter All. v. Black Hawk Cnty., 515 F. Supp. 3d 980, 991 (N.D. Iowa 2021) ("All citizens, and the government itself, have an interest in maintaining the integrity of elections. Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated from the injury to any other citizen."). Thus, Petitioners' injuries do not satisfy the first standing requirement, and the Court does not have jurisdiction over this case.[10]

---

[10] Having determined the minimum constitutional requirement for invoking this Court's jurisdiction is not met, the Court offers no opinion on whether this case would be barred by the Eleventh Amendment or by the mootness doctrine. See Hayes v. Sec'y, Fla. Dep't of Child, and Fams., 563 F. App'x 701, 703 (11th Cir. 2014) ("The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest."); Wood, 981 F.3d at 1316-17 (applying mootness doctrine where the plaintiff challenged the certification of election results because it is "not possible for [a court] to delay certification nor meaningful to order a new recount when the results are already final and certified").

**CONCLUSION**

Petitioners lack standing to seek a writ from this Court ordering Georgia's Secretary of State, Georgia's Attorney General, and the Attorney General of the United States to follow federal and state election laws. Accordingly, the Court **GRANTS** Respondents' motions to dismiss, dkt. nos. 14, 19, and **DISMISSES without prejudice** Petitioners' amended petition, dkt. no. 8. The Clerk is **DIRECTED to CLOSE** this case.

**SO ORDERED** this 1st day of May, 2025.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA